O'BRIEN PROPERTIES, INC. *v.* JOSEFA RODRIGUEZ ET AL.
(13843)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued April 3—decision released June 19, 1990

*David A. Pels,* for the appellants (defendants).

*Alfred J. Garofolo,* with whom, on the brief, was *Martin A. Gould,* for the appellee (plaintiff).

*Clarine Nardi Riddle,* attorney general, and *Richard J. Lynch* and *Sharon A. Scully,* assistant attorneys general, filed a brief for the attorney general as amicus curiae.

*Lawrence W. Berliner,* senior staff attorney, filed a brief for Eliot J. Dober, Executive Director of the Office of Protection and Advocacy for Persons with Disabilities, as amicus curiae.

GLASS, J. The dispositive issue in this summary process action is whether a tenant at sufferance is entitled to the "good cause" protection from eviction provided for in General Statutes § 47a-23c.[1] The trial court deter-

---

[1] "[General Statutes] Sec. 47a-23c. PROHIBITION ON EVICTION OF CERTAIN TENANTS EXCEPT FOR GOOD CAUSE. (a) (1) Except as provided in subdivision (2) of this subsection, this section applies to any tenant who resides in a building or complex consisting of five or more separate dwelling units and who is either: (A) Sixty-two years of age or older, or whose spouse, sibling, parent or grandparent is sixty-two years of age or older and permanently resides with that tenant; (B) blind, as defined in section 1-1f; or

mined that a tenant at sufferance is not entitled to such protection. We do not agree.

(C) physically disabled, as defined in section 1-1f, but only if such disability can be expected to result in death or to last for a continuous period of at least twelve months.

"(2) With respect to tenants in common interest communities, this section applies only to (A) a conversion tenant, as defined in subsection (3) of section 47-283, who (i) is described in subdivision (1) of this subsection, or (ii) is not described in subdivision (1) of this subsection but, during a transition period, as defined in subsectionn (4) of section 47-283, is residing in a conversion condominium created after May 6, 1980 or in any other conversion common interest community created after December 31, 1982, or (iii) is not described in subdivision (1) of this subsection but is otherwise protected as a conversion tenant by public act 80-370, and (B) a tenant who is not a conversion tenant but who is described in subdivision (1) of this subsection if his landlord owns five or more dwelling units in the common interest community in which the dwelling unit is located.

"(3) As used in this section, 'complex' means two or more buildings on the same or contiguous parcels of real property under the same ownership.

"(b) (1) No landlord may bring an action of summary process or other action to dispossess a tenant described in subsection (a) of this section except for one or more of the following reasons: (A) Nonpayment of rent; (B) refusal to agree to a fair and equitable rent increase, as defined in subsection (c) of this section; (C) material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or which materially affects the physical condition of the premises; (D) voiding of the rental agreement pursuant to section 47a-31, or material noncompliance with the rental agreement; (E) material noncompliance with the rules and regulations of the landlord adopted in accordance with section 47a-9; (F) permanent removal by the landlord of the dwelling unit of such tenant from the housing market; or (G) bona fide intention by the landlord to use such dwelling unit as his principal residence.

"(2) The ground stated in subparagraph (G) of subdivision (1) of this subsection is not available to the owner of a dwelling unit in a common interest community occupied by a conversion tenant.

"(3) A tenant may not be dispossessed for a reason described in subparagraph (B), (F) or (G) of subdivision (1) of this subsection during the term of any existing rental agreement.

"(c) (1) The rent of a tenant protected by this section may be increased only to the extent that such increase is fair and equitable, based on the criteria set forth in section 7-148c.

"(2) Any such tenant aggrieved by a rent increase or proposed rent increase may file a complaint with the fair rent commission, if any, for the town, city or borough where his dwelling unit is located; or, if no such fair rent commission exists, may bring an action in the superior court to con-

The plaintiff, O'Brien Properties, Inc. (landlord), sought to take possession of apartment C-6 located at 61 Willard Street in Hartford, from the defendants, Josefa Rodriguez, Priscilla Quinones and Samuel Melendez (tenants). In the first count of the revised complaint, the landlord sought possession against Rodriguez and Melendez based on a lapse of time. The second count, directed solely against Quinones, sought possession for unauthorized occupancy. Judgment of default was entered against Melendez. The other tenants, Rodriguez and Quinones, denied the essential allegations of the revised complaint and interposed a special defense claiming that Quinones was a protected tenant under § 47a-23c.

The facts found by the trial court as reflected in its memorandum of decision are essentially undisputed. Quinones, thirty-three years of age at the time of the trial, had resided in the apartment with Rodriguez, who is her mother, for almost two and one-half years. They shared the apartment with Melendez, until December, 1988, when he moved out. Melendez and Rodriguez occupied the apartment under an oral month-to-month lease. In September, 1988, the plaintiff became the property manager of the building and acquired title to it in January, 1989. Quinones' name was on the mail box throughout this time, yet the plaintiff's vice-president and the current property manager testified that they were unaware of her presence until shortly

test the increase. In any such court proceeding, the court shall determine whether the rent increase is fair and equitable, based on the criteria set forth in section 7-148c.

"(d) A landlord to determine whether a tenant is a protected tenant, may request proof of such protected status. On such request, any tenant claiming protection shall provide proof of the protected status within thirty days. The proof shall include a statement of a physician in the case of alleged blindness or other physical disability."

This statute was amended, effective October 1, 1989, by Public Acts 1989, No. 89-254, § 16.

before the notice to quit was issued in April, 1989. While Quinones contributes one half of the rent, Rodriguez purchases, makes out and signs the money orders by which the rent is paid to the plaintiff.

The question presented by this case is whether Quinones is a "tenant" for the purposes of § 47a-23c (a) (1), which mandates, in part, that a person can be evicted only upon a showing of "good cause" if the following criteria are met: (1) the person is a tenant; (2) the building or complex consists of five or more separate dwelling units; and (3) the tenant is elderly, blind or physically disabled. Although the parties agree that the building complex in question has five or more separate dwelling units and that Quinones is physically disabled with cerebral palsy, they disagree about Quinones' status as a "tenant" for the purposes of § 47a-23c (a) (1). The trial court rendered judgment for the plaintiff, holding that Quinones, as a tenant at sufferance, is not a "tenant" for the purposes of § 47a-23c (a) (1). The defendants argue that the trial court should not have made this determination. We agree.

The trial court concluded that a tenant at sufferance could not be a "tenant" for the purposes of § 47a-23c (a) (1), because subsection (b) of the statute, which enumerates seven grounds for "good cause" eviction, states that a landlord may evict a tenant if the tenant refuses to agree to "a fair and equitable rent increase." The trial court reasoned that since "a tenant at sufferance is not obligated to pay *rent* but only the reasonable rental value of the premises as use and occupancy . . . failure to pay use and occupancy could not be grounds to evict such a tenant otherwise protected by § 47a-23c (a) (1)." (Emphasis added.) The trial court reasoned further that holding to the contrary "would entitle a tenant at sufferance to greater immu-

nity than is afforded all other tenants," leading to a "ludicrous" result. We are not persuaded by the trial court's reasoning.

General Statutes § 47a-1 (*l*)[2] defines "tenant" as follows: " 'Tenant' means the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others, or as is otherwise defined by law." " 'A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated.' *Welk* v. *Bidwell,* 136 Conn. 603, 608–609, 73 A.2d 295 (1950)." *Rivera* v. *Santiago,* 4 Conn. App. 608, 609–10, 495 A.2d 1122 (1985). "The issuance by a landlord of a notice to quit is an unequivocal act terminating the lease agreement with the tenant. Termination of the lease does not terminate the tenancy since, upon service of a notice to quit, a tenancy at sufferance is created. *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 460 A.2d 1311 (1983)." Id., 610. "After a notice to quit has been served . . . a tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling unit. *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 131, 357 A.2d 910 (1975)." Id.

The defendants argue that a tenant at sufferance is included within § 47a-1 (*l*)'s definition of "tenant" by virtue of the language: *"or as is otherwise defined by law."* (Emphasis added.) We agree. We note that no word in a statute should be treated as superfluous or insignificant; *Harris Data Communications, Inc.* v.

[2] General Statutes § 47a-1 provides in pertinent part: "As used in this chapter and sections 47a-21, 47a-23 to 47a-23c, inclusive, 47a-26a to 47a-26g, inclusive, 47a-35 to 47a-35b, inclusive, 47a-41a, 47a-43 and 47a-46 . . . .

"(*l*) 'Tenant' means the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others or as is otherwise defined by law."

*Heffernan,* 183 Conn. 194, 197, 438 A.2d 1178 (1981); *Green* v. *Freedom of Information Commission,* 178 Conn. 700, 703, 425 A.2d 122 (1979); and that we strive to attach independent meaning to every phrase contained in a legislative enactment. *Rawling* v. *New Haven,* 206 Conn. 100, 112, 537 A.2d 439 (1988). Thus, given that § 47a-1 (*l*) expressly states that a person with a rental agreement is a "tenant," if we are to give any independent meaning to the language *"or as is otherwise defined by law,"* (emphasis added) we must conclude that certain persons classified as tenants by law who do not have rental agreements are also "tenants" under the statute.

Our conclusion that a tenant at sufferance is a "tenant" for the purposes of § 47a-23c (a) (1) finds support in the fact that § 47a-23c is a remedial statute intended to benefit elderly, blind and physically disabled tenants. Since remedial statutes are to be construed liberally in favor of those whom the legislature intended to benefit; *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 615 n.4, 440 A.2d 810 (1981); *Hartford Fire Ins. Co.* v. *Brown,* 164 Conn. 497, 503, 325 A.2d 228 (1973); and given the fact that the legislature did not expressly exclude tenants at sufferance, we conclude that § 47a-23c should be liberally construed to protect all elderly, blind and physically disabled tenants, including tenants at sufferance.

Moreover, if we were to hold that tenants at sufferance were not "tenants" under § 47a-23c (a) (1), we would, in effect, be emasculating the protection afforded by the statute to the elderly, the blind and the physically handicapped. Specifically, if tenants at sufferance were not "tenants" for the purpose of the statute, then a landlord who wished to evict elderly, blind and disabled tenants without "good cause" would merely have to wait until their leases lapsed, because they would have then become tenants at sufferance.

In addition, we are not persuaded by the trial court's concern regarding the apparent inapplicability, to tenants at sufferance, of one of the reasons for "good cause" eviction. In particular, the trial court was concerned that a landlord would be deprived of his right under § 47a-23c (b) (1) (B) to evict a tenant based upon the tenant's "refusal to agree to a fair and equitable rent increase." The trial court reasoned that, since a tenant at sufferance does not pay rent, but rather pays use and occupancy, this reason for eviction would not apply to a tenant at sufferance. We are not persuaded, however, that this ground for "good cause" eviction is inapplicable to tenants at sufferance. In particular, we conclude that a landlord could still exercise his right to "good cause" eviction against a tenant at sufferance under § 47a-23c (b) (1) (B), simply by offering the tenant at sufferance a rental agreement at a fair and equitable rent. Thereafter, if the tenant at sufferance refused to accept the rental agreement, the landlord's recourse to "good cause" eviction would be appropriate. In sum, we hold that a tenant at sufferance is a "tenant" for the purposes of § 47a-23c (a) (1).[3]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendants.

---

[3] The dissent argues that the premise from which the majority opinion proceeds is "fatally flawed" because the majority "fails to address the threshold question of how Quinones' status was elevated from an occupant to a tenant at sufferance." The dissent, however, ignores the fact that not only did the trial court find that Quinones was a tenant at sufferance, but that the defendants have not even challenged that finding. The defendants' statement of the sole issue raised by this appeal reads: "Is a *tenant at sufferance* entitled to the 'good cause' protections of [General Statutes §] 47a-23c?" (Emphasis added.)

Furthermore, even if the defendants had challenged the trial court's finding that Quinones was a tenant at sufferance, we conclude that the record adequately supports the trial court's finding. Therefore, the trial court's finding was not clearly erroneous. See Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 219–22, 435 A.2d 24 (1980).

In this opinion PETERS, C. J., SHEA and HULL, Js., concurred.

COVELLO, J., dissenting. I disagree with the majority opinion in that it fails to address the threshold question of how Quinones' status was elevated from an occupant to a tenant at sufferance. By concluding that Quinones was a tenant at sufferance, the majority then goes on to find her a tenant within the meaning of General Statutes § 47a-1 (*l*). Since the opinion fails to disclose how the tenancy at sufferance was created, I respectfully submit that the premise from which the opinion thereafter proceeds is fatally flawed.

The trial court found that Quinones resided with her mother at the Willard Street premises for almost two and one-half years. The trial court further found that "Melendez [the building superintendent] and Rodriguez [Quinones' mother] occupied the apartment under an oral month to month lease." Finally, the trial court found that there was no rental agreement between the plaintiff and Quinones as the plaintiff was unaware that she was even on the premises until shortly before it issued the notice to quit.

I submit that these facts establish that Melendez was the tenant at sufferance, i.e., the "person who came into possession of land rightfully [who thereafter] continues in posession wrongfully after his right thereto has terminated." *Welk* v. *Bidwell,* 136 Conn. 603, 608–609, 73 A.2d 295 (1950). The existence of possession is largely a question of fact dependent on the nature of the property and the surrounding circumstances. "Generally, the inquiry is whether the individual has exercised the dominion and control that owners of like property usually exercise. 35 Am Jur. 2d, Forcible Entry and Detainer § 15; see *Hancock* v. *Finch,* 126 Conn. 121, 123, 9 A.2d 811 (1939)." *Communiter Break Co.* v. *Scinto,* 196 Conn. 390, 394, 493 A.2d 182

(1985). Here, the trial court concluded that Melendez, who thereafter moved out, and Rodriguez were in possession, not Quinones. Thus, Quinones had no greater status than simply that of family member or occupant.

That the General Assembly specifically contemplated that there could be occupiers of property who do not have the status of tenants is found in the definition under § 47a-1 (j) of "Roomer," i.e., "a person *occupying* a dwelling unit, which unit does not include a refrigerator, stove, kitchen sink, toilet and shower or bathtub and one or more of these facilities are used in common by other occupants in the structure." (Emphasis added.) See also Restatement (Second), Property § 1.2, illustrations 1 and 2.

I submit that the startling conclusion reached by the majority here is that any occupant, whether family member, visitor or whatever, whose presence on the premises is derived from the person in actual possession, becomes a tenant at sufferance and therefore has available the full panoply of rights found in § 47a-1 et seq., including, e.g., the right to notice to quit possession, the right to institute legal action to enforce the landlord's responsibilities, the right to secure substitute housing in event of the failure of the landlord to provide essential services, or to recover two month's rent or double the actual damages sustained by the tenant due to the landlord's failure to provide such services, etc. I do not believe that this is the contemplation of the statute. Accordingly, I dissent.