[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks possession of an apartment in a multi family housing project owned by plaintiff in the City of Stamford. The defendant is a 62 year old tenant. The project is for those who are elderly or under a disability. The defendant was admitted as a tenant at age 58 under the mental disability criteria. The plaintiff's complaint seeks the eviction by reason of violation of various paragraphs of the lease. The underlying incident which supports the plaintiff's claim for lease violations was a knife assault that occurred on November 18, 1992. The plaintiff claims this assault is a "serious nuisance."
The defendant denies the knife assault and the lease violation and has filed two special defenses. The first claims the protection ofConnecticut General Statutes § 47a-23c(a)(1) in that the premises is a building of more than five units and the defendant is 62 years old and/or under a disability which is expected to last for at least twelve continuous months. The second claims equitable relief from forfeiture. Although the special defenses were filed in August 1994, they complied with a new requirement as of December 20, 1994 that the equitable defense of relief from forfeiture in a summary process action must be pleaded as a special defense. Oakland Heights Mobile Park, Inc. v.James Simon, 36 Conn. App. 432, 435 (1994).
There is no reported case in Connecticut in which an assault was the basis for an eviction.
FACTS
The defendant now age 62, was subject to a written lease which contains three clauses relevant to this matter.
 Paragraph 7(c); "Tenant agrees not to use or permit the use of the leased premises for any illegal purpose or for any purpose other than as a private residence; to refrain from illegal or other activity which impairs the physical or social CT Page 5038 environment of the development; and to conduct himself and to require the other persons in his household or on the leased premises with his consent to conduct themselves in a manner which will not impair the safety, comfort or welfare of other tenants or constitute a nuisance or serious nuisance as defined by Connecticut law."
 Paragraph 9a(9); "Tenant shall be obligated: . . . (9) To conduct himself and cause other persons who are on the premises with his consent to conduct themselves in a manner which will not disturb his neighbor's peaceful enjoyment of their accommodations and will be conducive to maintaining development in a decent, safe and sanitary condition."
 Paragraph 9(a)(10)i; "(10) To assure that the Tenant, any member of the household, a guest or other person under the Tenant's control shall not engage in; i, Any criminal activity that threatens the health, safety or right to peaceful enjoyment of public housing premises by other residents."
The defendant lives in apartment A, 186 Greenwich Avenue, Stamford, Connecticut which is the apartment closest to the community room. A residence council meeting had been scheduled for 5:00 pm on November 18, 1992 in which tenants of another similar project located 172 Greenwich Avenue were to be in attendance. Arlene Mercer, who lived at 172 Greenwich Avenue, was secretary of the residence council. The residence council serves tenants at both 172 Greenwich Avenue and 186 Greenwich Avenue.
There had been bad blood between the defendant and Arlene Mercer. Arlene Mercer was currently under a Superior Court restraining order not to have contact with Ethel Morrow. At 4:30 pm on November 18, 1992 the defendant called the plaintiff's site manager and said "If Arlene Mercer comes, I will kill her." The site manager did not attend the 5:00 pm meeting.
At 4:50 pm Eleanor Walker, another resident of 186 Greenwich Avenue, saw the defendant outside the building next to the mailbox area carrying a butcher knife in her right hand. The defendant told Mrs. Walker, "I am going to stick the bitch". When she inquired of the defendant what "bitch" was she talking about, "Arlene" was the answer given by the defendant. The resident then informed the defendant that you are going to get into trouble and lose your apartment. The defendant answered "I don't care". Mrs. Walker heard a commotion about 10 minutes later but was not a witness to the actual incident. CT Page 5039
Eleanor Walker heard noise in the direction of the community room at approximately 5:00 pm. She went to the area and saw Arlene Mercer standing a few feet away from the defendant's apartment in the hallway. She saw the defendant sitting on the floor in front of the door to her apartment with a male tenant holding the her hand. She saw Arlene Mercer with her left hand bandaged up and blood on the front of her blouse. She saw the defendant holding a butcher knife and heard the defendant say "I'm going to kill you, bitch". She also noticed that someone had sprayed mace in the area and the odor and effect of mace was throughout the community room and hallway.
Another resident of the 186 Greenwich Avenue, Gladys Gascans, testified by deposition. She heard the defendant state before Arlene Mercer came to the meeting at 5:00 pm on November 18, 1992; "If Arlene comes to the meeting, I'm going to kill her". She saw Arlene Mercer come to the door of the community room. She saw Ethel Morrow come around the corner with her knife and run to Arlene Mercer. Arlene Mercer tried to resist and twisted away. She saw the defendant spraying mace and holding a knife in one hand trying to hit Arlene Mercer with the knife.
A police officer came to the scene shortly thereafter and noted that Arlene Mercer had a small cut or abrasion on her chin. He testified that there were no other cuts or lacerations to Arlene Mercer. He did note that Arlene Mercer had a running nose, stinging eyes and other injuries normally associated with mace. He smelled mace throughout the area.
The police officer interviewed the defendant who stated that she had an ongoing problem with Arlene Mercer. She stated that Arlene Mercer had attacked first. Her actions were self-defense only. The defendant stated that Arlene Mercer had no business being in the 186 Greenwich Avenue building and further stated to the police officer that she felt that Arlene Mercer was there to attack her. She therefore defended herself by spraying the mace and thereafter Arlene Mercer actually attacked her. As a result of the investigation Arlene Mercer was charged with breach of peace and Ethel Morrow was charged with assault in the second degree.
Ethel Morrow testified that Arlene Mercer had at one point been her friend. Around June, 1992 Arlene Mercer stopped speaking to the defendant. On September 28, 1992 Arlene Mercer attacked Ethel Morrow on a public bus. She hit the defendant in the face and two people had to pull Arlene Mercer off of Ethel Morrow. Ethel Morrow suffered personal CT Page 5040 injuries including a broken bone. Arlene Mercer was arrested and the defendant was treated and released from the hospital. The defendant was arrested for breach of the peace and the Arlene Mercer was arrested for assault.
On November 11, 1992 the Superior Court entered a restraining order against Arlene Mercer requiring that she remain away from Ethel Morrow. That court order was in effect on November 18, 1992.
Ethel Morrow said that she became aware of the meeting scheduled at 5:00 pm and was aware that Arlene Mercer was going to be in attendance. She called the site manager for the Housing Authority and asked that she call off the meeting, reminding the site manager of Arlene Mercer's restraining order.
At about 5:00 pm Arlene Mercer came upon the defendant standing in hallway. The defendant testified that Arlene Mercer knocked the defendant down in front of her apartment door. The defendant yelled at her next door neighbor to call the police. The defendant was still holding a knife. She felt that her left hand was bleeding and then she admitted that she did spray the mace at Arlene Mercer. The defendant claims that Arlene Mercer in turn sprayed mace at the defendant when the defendant was down on the ground. The defendant felt frightened. She testified that she saw no evidence of injuries to Arlene Mercer. She said Arlene tried to take the knife away from the defendant and both of them struggled for the knife. A male tenant came. The defendant gave the knife to the male tenant who carried it to his apartment for safe keeping.
The defendant testified that she did not intend to her hurt Arlene Mercer. She says she did not know that Arlene Mercer was in the hall. She denies talking to Mrs. Walker at the mailbox. The defendant first revealed on cross-examination that Arlene Mercer had a small knife in her hand of some four to six inches in length. It looked like a pocket knife. The defendant saw the knife prior to the attack. She had not testified to that evidence on direct examination nor was there any evidence of that fact contained in the Stamford Police Report.
DISCUSSION OF LAW
The defendant is 62 years of age. She was admitted as a tenant to this project on the basis of her disability; a "psychotic disorder". A copy of the admitting medical report was offered into evidence which the court has considered. The court finds that the defendant, Ethel Morrow is a protected tenant in accordance with Connecticut General StatutesCT Page 5041§ 47a-23c. The court further finds that the premises occupied by the defendant was a building or complex consisting of five or more separate dwelling units. Therefore the plaintiff can only prevail if the eviction is brought for "good cause". Connecticut General Statutes §47a-23c(b)(1).
The plaintiff claims that the "good cause" for this eviction is found in three specific sections of the statute in question.
1. Connecticut General Statutes § 47a-23c(b)(1)(C); "material noncompliance with Section 47a-11 or subsection (b) of Section 21-82, which materially affects the health and safety of the other tenants or which materially affects the physical condition of the premises."
2. Connecticut General Statutes § 47a-23c(b)(1)(D); "voiding of the rental agreement pursuant to section 47a-31 or material noncompliance with the rental agreement."
3. Connecticut General Statutes § 47a-23c(b)(1)(E): "material noncompliance with the rules and regulations of the landlord adopted in accordance with section 47a-9 or 21-70."
It is only necessary for the decision of this case to consider the first reason set forth in § 47a-23c(b)(1)(c), "material noncompliance with § 47a-11 . . . which materially affects the health and safety of other tenants or which materially affects physical condition of the premises."
The tenant has statutory responsibilities Connecticut GeneralStatutes § 47a-11(g) which states "Conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors peaceful enjoyment of the premises or constitute a nuisance, as defined in § 47a-32 or a serious nuisance, as defined in § 47a-15." This clause in the ConnecticutGeneral Statutes § 47a-11 has been effectively incorporated in the lease in paragraph 7(c). Paragraph 7(c) prohibits actions that "constitute a nuisance or serious nuisance as defined by Connecticut law." This court's decision will turn on whether the conduct as set forth amounts to a "serious nuisance" under Connecticut General Statutes § 47a-11
A finding of a statutory "serious nuisance" is automatically a violation of paragraph 7(c) of the lease.
It is therefore not necessary to consider the other two paragraphs of the lease as to peaceful enjoyment and not engaging in criminal activity nor is it necessary to consider the other two subparagraphs of CT Page 5042 the protected tenant's "good cause" eviction standards under ConnecticutGeneral Statutes § 47a-23c(b).
This court has not found any reported cases involving assaults amounting to a "serious nuisance". Computer research shows that the only cases considered by any court involve drugs as creating a serious nuisance. Housing Authority v. Harris, 225 Conn. 600 (1993). The Harris case is the only Supreme Court case defining serious nuisance. It is related to a drug case. The Harris case involved the all too familiar scenario of a tenant in a federally subsided public housing project being evicted by reason of the fact that her child engaged in drug activity. The claim was that the defendant tenant committed a serious nuisance by failing to require the child to conduct herself in manner that did not constitute a serious nuisance.
Serious nuisance is defined in Connecticut General Statutes §47a-15(A) "inflicting bodily harm upon another tenant or the landlord or threatening to inflict such harm with the present ability to effect the harm and under circumstances which would lead a reasonable person to believe that such threat would be carried out, B) substantial and willful destruction of part of the dwelling unit or premises, C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord, or D) using the premises for prostitution or the illegal sale of drugs." Connecticut General Statutes § 47a-15;Housing Authority v. Harris, supra p. 608 n1.
There is one Superior Court case that discusses the definition of serious nuisance other than in a strictly drug context. In dicta the court held "certainly it could be argued that these are serious violations. 1, 2, 4, and 5 fall within the definition of serious nuisance". Reasons 1, 2, 4, and 5 were as follows: 1) turning off or shutting off the furnace for the property in which the premises are located, thereby resulting in a lack of heat and/or hot water." 2) Allowing or intentionally causing damage to, ripping or tearing apart and/or otherwise disconnecting the clothes dryer vent belonging to the first floor tenants". 4) "breaking the glass of the windows in your apartment, the premises and/or the property in which the premises are located", and 5) "using the premises known as 3-5 Glen Road, second floor, East Hartford, Connecticut for the illegal sale of drugs."Moisiadis v. Failla, H-941, 1991 CT Sup. 2802, 2805-2806, March 4, 1991, (Berger, J.).
We therefore must turn to the serious nuisance statute. ConnecticutGeneral Statutes § 47c-15(A). "When the language of a statute is plain and unambiguous, we need look no further than the words CT Page 5043 themselves because we assume that the language expresses the legislature's intent." Frillici v. Westport, 231 Conn. 418, 420 (1994).Coburn v. Ordner, 1 Conn. Ops. 423, April 17, 1995. The actions of the defendant Ethel Morrow are such to amount to a "serious nuisance" by reason of 1) inflicting bodily harm upon another tenant, 2) threatening to inflict such harm with the present ability to effect the harm and under circumstances which would lead a reasonable person to believe that such threat would be carried out."
The defendant stated to three separate people that she intended to kill Arlene Mercer. She was seen by two people in the possession of a knife and mace. Although it is disputed and the police report does not seem to verify that Arlene Mercer was actually cut with the knife, it is clear that the knife was used in a threatening manner intending to inflict such harm with the present ability effect that harm. The use of mace was also done in a threatening manner. Therefore the actions of Ethel Morrow as set forth in this decision are a "serious nuisance" in accordance with Connecticut General Statutes § 47a-15(A). That serious nuisance is a violation of paragraph 7(c) of the defendant's lease with the plaintiff, Housing Authority of the City of Stamford.
CONCLUSION
After consideration of the evidence and documents the court is of the opinion that the plaintiff furnished the required pretermination notice in compliance with the terms of the lease, the federal statutes and the federal regulations. Jefferson Garden Associates v. Greene,202 Conn. 128, 145 (1987). The plaintiff complied with the notice and time requirements for the Notice to Quit as well as the lease contract notice requirements. Connecticut General Statutes § 47a-23; Jo-Mark Sand Gravel Co. v. Pantanella, 139 Conn. 598, 600-601 (1953). The plaintiff has made a prima facia [facie] case for violation of the paragraph 7(c) of the lease by reason of a serious nuisance. Connecticut General Statutes§ 47-11 and § 47a-15(A)
Arlene Mercer is a tenant of the plaintiff in another building housing similar elderly disabled individuals. Both 186 Greenwich Avenue and 172 Greenwich Avenue share the use of the community room in 186 Greenwich Avenue. Arlene Mercer had a right, pursuant to her status as a tenant, to be in the community room at 186 Greenwich Avenue at 5:00 pm November 18, 1992. Arlene Mercer was therefore an "other tenant" and "another tenant" as defined in the defendant's lease and as stated inConnecticut General Statutes § 47a-15.
Therefore the court turns to the two special defenses raised by the CT Page 5044 defendant. As to the first special defense the court has already found that the defendant is a protected tenant under Connecticut GeneralStatutes § 47a-23c(a)(1). The premises at 186 Greenwich Avenue, Stamford, Connecticut consists of a building of five or more dwelling units. Ethel Morrow is a protected tenant by reason of the fact that she is sixty two years of age. By reason of that finding the defendant has sustained its burden of proof as to the first special defense.Practice Book 164; Rix v. Stone, 115 Conn. 658, 664 (1932). Therefore under the statutory requirement of the good cause eviction it is now the plaintiff's burden of proof to show that one of the reasons set forth by the statute for protected tenant applies in this case. Chase v.Fitzgerald, 132 Conn. 461, 465 (1946) The landlord claims the evidence established a violation of 47a-23c(b)(1)(C) "material noncompliance with § 47a-11 . . . which materially affects the health and safety of the other tenants" Connecticut General Statutes § 47a-11(g) refers to serious nuisance." The plaintiff's burden of proof in rebutting the first special defense of the defendant has been proven since the plaintiff has proved a serious nuisance. O'Brien Properties, Inc. v.Rodriquez, 215 Conn. 367, 373 (1990).
The second special defense raised by the defendant is equitable relief from forfeiture. The defendant claims three reasons for equitable relief; 1) "The defendant has a physical/mental impairment which is directly related to the problems she is experiencing in this tenancy." 2) "The alleged default or breach of the rental agreement has been cured." 3) If the defendant is evicted, she will be homeless." The plaintiff has sustained its burden of proof regarding the complaint filed. The defendant by pleading a special defense has the burden of proof of proving each element of the special defense by a fair preponderance of the evidence. Swift Coe v. Rexton, Inc., 187 Conn. 540,543 (1982). The court is the arbitrator of the believability or credibility of the witnesses. "The credibility of witnesses is entirely a matter for the discretion of the trier who alone can observe the witnesses and draw inferences from the demeanor." Piantedosi v.Floridia, 186 Conn. 275, 277 (1982). The court must weigh and interpret the evidence before it. Smith v. Smith, 185 Conn. 491, 493 (1981).
The Supreme Court has approved the defense of "equity abhors a forfeiture", in a long standing series of cases. Pierce v. Staub,78 Conn. 451, 466 (1906); Menzies v. Fisher, 165 Conn. 338, 357 (1973). This concept has been applied to summary process actions. Thompson v.Coe, 96 Conn. 644, 648 (1921); Nicoli v. Frouge Corporation, 171 Conn. 245,246 (1976). This latest pronouncement of this doctrine is Fellowsv. Martin, 217 Conn. 57, 65, (1991). The Supreme Court made the equity abhors a forfeiture doctrine applicable to summary process cases as CT Page 5045 early as Thompson v. Coe, in 1921. Although the cases in which this doctrine has been cited in the past have been commercial summary process cases, Fellows v. Martin applied the equitable relief from forfeiture doctrine to a residential lease. A twenty five dollar dispute over a parking accommodation resulted in the withholding of a portion of the rent check in April in a residential duplex in East Hartford where the tenancy was for a term of 99 years. The Supreme Court did not order eviction under those circumstances because of the enormous loss to the tenant "wholly disproportionate to the injury suffered" by the landlord. In an historical analysis Fellows v. Martin, lists a series of Connecticut Appellate and Superior Court cases that have applied the ancient equitable doctrine against forfeiture to summary process actions for non payment of rent. Cases in which relief was granted to the tenant were cited as well as those cases where the relief was not granted. It appears the equitable doctrines of Fellows v. Martin, apply to summary process other than non-payment.
Although it appears to this court that there are a number of other considerations other than set forth in Fellows v. Martin, the two most widely quoted considerations are: "1) whether, in the absence of equitable relief, one party will suffer a loss wholly disproportionate to the injury to the other party" and 2) "whether the injury to the other party is reparable [repairable]." Fellows v. Martin, supra 66. Also discussed is the doctrine of clean hands in order to seek equitable relief. Whether or not the tenant's default was willful or grossly negligent would also be another factor to be considered. The court must balance the equities between the parties.
The defendant claims that the equities should be balanced in her favor and points to the following considerations: 1) she is 62 years of age, 2) she was admitted to a subsidized housing project by reason of a mental disorder from which she is still suffering, 3) the basis upon which the eviction to be sought is part and parcel of her mental impairment, 4) the deterioration of the relationship of between herself and Arlene Mercer will no longer occur since Arlene Mercer died of a long standing diabetic condition a few years ago, 5) the defendant claims that if she is evicted she will be homeless, 6) if she is evicted she will lose what is tantamount to a perpetual lease, 7) the plaintiff is guilty of laches in the long delay from the incident date of November 18, 1992, and 8) the facts of this case are mitigated by Ethel Morrow's perception that her actions were in self defense. East HartfordHousing Authority v. Parker, H-976, 7 CSCR 185, October 26, 1992 (Holzberg, J.)
The plaintiff claims the following equitable considerations. It is CT Page 5046 obligated to enforce the terms of its lease agreement as well as the requirements of the Connecticut General Statutes for the purpose of providing quiet enjoyment to other tenants of the premises. Although the landlord has an obligation to the tenant, the tenant has an equal obligation of good faith and fair dealing to the landlord. Warner v.Konover, 210 Conn. 165, 172 (1991). The Statutes of the State of Connecticut do not require a corrective opportunity offered by a Kapa notice under the Connecticut General Statutes § 47a-15(A); KapaAssociates v. Flores, 35 Conn. Sup. 643, 647 (1981). Thus the allegations of a serious nuisance must be treated promptly by the landlord, the tenant and other tenants in the building. The defendant showed and displayed a butcher knife to Arlene Mercer as well as two other tenants. The defendant conveyed the threat to not only Arlene Mercer but two other tenants as well as to the plaintiff's site manager. The landlord has the obligation to enforce the leases of other tenants and to provide an atmosphere of safety, tranquility, enjoyment. The actions of the defendant in violation of that atmosphere.
This court is especially mindful of the defendant's expectation of a continuing tenancy as a tenant of a Housing Authority. HartfordHousing Authority v. Parker, supra, Ashley Willard Asylum Associates v.Rodriquez, H-1015, October 19, 1993 (Holzberg, J.). The plaintiff's expectation of a continuing tenancy does constitute a property interest protected by the Fourteenth Amendment to the United States Constitution and by Article First, Section 8 of the Connecticut Constitution. The defendant tenant is entitled to due process. Her tenancy should be terminated only for good cause. Joy v. Daniel, 479 F.2d 1236 (4th Cir. 1973); Lopez v. Henry Phipps Plaza South, 498 F.2d 937 (2nd Cir. 1974). Ashley Willard Asylum Associates v. Rodriquez, supra 10.
The defendant raises the issue as to laches by reason of fact that the notice to quit was not issued until April 29, 1994 based upon a November 18, 1992 incident. Laches is an equitable doctrine of law that prevents the plaintiff from enforcing its rights by reason of an unreasonable delay due solely due to the actions of the plaintiff which delay has prejudiced the defendant. A Sangivanni Sons v. F. M.Floryan Co., 158 Conn. 467, 476 (1969). The defendant has the burden of proving the elements of laches. Cleary v. Zoning Board, 153 Conn. 513,518 (1966).
The evidence shows that the defendant availed herself of the grievance hearing rights with the assistance of her attorney in early 1993. The delay was caused by a general lack of communication between all the parties and further written correspondence that failed to clarify the matter. The defendant by a letter dated April 13, 1994 CT Page 5047 withdrew the request for the grievance hearing and stated "after discussion with my client she has decided to withdraw her request for a grievance hearing and to litigate all issues in this summary process action." The defendant has failed to prove that the plaintiff is guilty of laches under the circumstances of this case. "It would appear that the defendants as well had the responsibility of acting with proper diligence to use the procedures available to them for a prompt decision." A. Sangivanni Sons v. F. M. Floryon Co., supra 476.
It was argued during trial, although that it is not part of the pleadings, that the actions of the defendant were justified under the theory of self-defense. "In any prosecution for an offense, justification, as defined in § 53a-17 to § 53a-23, inclusive, shall be a defense."Connecticut General Statutes § 53a-16. "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (4) A person acting under a reasonable belief that another person is about to commit suicide or to inflict serious physical injury upon himself may use reasonable physical force upon such person to the extent that he reasonably believes such to be necessary to thwart such result."Connecticut General Statutes § 53a-18 The use of physical force in the defense of a person under Connecticut General Statutes states "a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Connecticut General Statutes § 53a-19. "A person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except the actor shall not be required to retreat if he is in his dwelling, as defined in § 53a-100, or place of work and was not the initial aggressor". Connecticut General Statutes Section §53a-19(b) "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor." The use of physical force upon another person under such circumstances is "justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force". Connecticut General Statutes § 53a-19(c) Although this is not a criminal case the application of these principles have been CT Page 5048 called to the attention of the court by the defendant. The determination of the use of physical force in self defense must be used by applying the subjective/objective test. Hanaver v. Coscia 157 Conn. 49,54 (1968); State v. Williams, 25 Conn. App. 457, 464 (1987). The trier must view the situation from the perspective of the defendant. However the defendant's belief must ultimately be found to be reasonable. State v. Williams, supra 464.
Connecticut General Statutes § 53a-100 defines "dwelling" for the purpose of criminal sanctions as "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present." Although this assault took place in the hallway and common room of 186 Greenwich Avenue it did take place within a building. A building is one in which is occupied by individuals in separate apartments including that of the defendant. A definition of a building is further stated: "Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor, is in addition to being part of such building, a separate building." It appears by the definition ofConnecticut General Statutes § 53a-100 that the common hallway and community room is not a "dwelling" in accordance with § 53a-100.
A dwelling unit "means any house or building, or portion, thereof which is occupied, is designed or to be occupied, or is rented, leased or hired out to be occupied, as a home or residence of one or more persons." Connecticut General Statutes § 47a-1c It appears that the hallway and community building under the landlord tenant definition of dwelling unit would be a dwelling unit. The self defense statutes require the use of Connecticut General Statutes § 53a-100 definitions. Regardless of the varying definitions of the dwelling unit it appears that both Arlene Mercer, who is a tenant of different project and a secretary of the residence council for both 172 Greenwich Avenue and 186 Greenwich Avenue, had the absolute right to be present in the premises. The defendant under the circumstances of this case cannot use to her advantage the portion of the statute that she shall not be required to retreat if she is in her dwelling as contained in Connecticut GeneralStatutes § 53a-19(b)(1).
The defendant did not sustain her burden of proof based on credible evidence as to the defenses of justification by reason of use of reasonably physical or deadly physical force. The plaintiff is not guilty of laches.
Mindful of those considerations the court must weigh the equities in favor of the plaintiff. The court cannot condone the continued CT Page 5049 tenancy of a 62 year old woman who while suffering from psychotic disorders displays mace and a butcher knife in an elderly housing project while uttering direct threats against a specified tenant in the public hallways and community room. This serious nuisance is not mitigated by the fact that Arlene Mercer was fortunate enough to escape a knife laceration. Fellows v. Martin, II 223 Conn. 152, 155 (1992).
The judgment is rendered in favor of the plaintiff as against the defendant, Ethel Morrow for immediate possession for Apartment A, 186 Greenwich Avenue, Stamford, Connecticut.
BY THE COURT,
KEVIN TIERNEY, JUDGE