[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Carrie Anne Newton has appealed following administrative proceedings held before the Liquor Control Commission (hereinafter referred to as "the Commission"). On July 7, 1995, the Commission rendered a decision denying the plaintiff, Carrie Newton d/b/a Carrie's American Grill and Tavern Off The Green, application for a beer and wine permit. The Commission affirmed its decision on November 16, 1995 after a hearing held to supplement the record.
Carrie Newton was the sole proprietor and owner of the business known as Carrie's Coffee Shop which originally occupied the premises located at 342 Bantam Road, Litchfield, Connecticut. This tenancy began with a written lease of approximately the six hundred (600) square foot building, executed on September 29, 1993 by Martin Curnan, Lorraine Curnan and Gary Copeland, and was guaranteed by Carrie Newton. (See Commission Exhibit 8). Ms. Newton paid the requisite rent of six hundred dollars per month as required under this written lease, until April of 1994 when an CT Page 5677 addendum to the lease was executed by Carrie Newton, Martin Curnan, and Gary Copeland. (Record Document No. 8 and Respondent's Exhibit 5).
This addendum incorporated the September 1993 lease terms but added the name of Carrie Newton's business, and increased the rent because the business had been expanded and now occupies additional space. These renovations were performed with the knowledge of the lessors which included Martin Curnan's involvement in the applications for zoning variances. (Record Documents Nos. 12, 13). Also the lease addendum acknowledged Carrie Newton's planned pursuit of a liquor permit for the premises.
Pursuant to this addendum, Carrie Newton paid the increased rent of twelve hundred dollars ($1,200.00). (See Transcript pp. 26-28, 5/25/95). This rent was accepted each month by Lorraine Curnan and Martin Curnan. Carrie Newton applied for her permit in August of 1994. The application was accepted by the Department of Liquor Control in October 1994 along with the required fee. During the time that the Plaintiff awaited a response from the Department of Liquor Control, the plaintiff intended to combine the original 1993 lease and the 1994 addendum into one document. (See Record Document No. 16). The plaintiff then prepared a lease dated September 29, 1994, signed it and mailed it to the Curnans in Florida for their signatures. (See Record Document No. 16). The Curnans sent her in return a photocopy of the fully executed lease. The Plaintiff then sent this lease to the Department of Liquor Control to be part of her application. (See Transcript p. 161, 5/25/95).
Subsequent to receiving this photocopy of the lease, the plaintiff had several contacts with Martin and Lorraine Curnan, including Record Document No. 6, a March, 1995 letter written by the Curnans wishing the plaintiff success with her business. At no time did either indicate that there was a problem with the lease or that they never signed it, and Lorraine Curnan admitted she did receive Carrie Newton's original lease containing her signature. (See Transcript p. 37, 5/25/95).
It was not until late in March 1995 that Carrie Newton learned from the Department of Liquor Control that there was a problem with the lease, in that, Lorraine Curnan, trustee was the owner of the property and that her signature alone would be required on the lease. CT Page 5678
At the administrative hearing, undisputed testimony from Attorney Charles Casella, the plaintiff's former counsel, revealed information from Attorney Bennett, counsel for Lorraine Curnan, as to his client's intentions and/or motives with regard to Carrie Newton as a tenant at 342 Bantam Road. It was learned that 342 Bantam Road in Litchfield is the target of a multi-million dollar development, and that Carrie Newton's business is an obstacle to such development. (See Transcript pp. 86-88, 5/25/95) Therefore, Lorraine and Martin Curnan would object to any liquor permit application and wished to limit Carrie Newton's term of tenancy. (See Transcript p. 88, 5/25/95).
Carrie Newton paid the increased rent of Twelve Hundred Dollars ($1,200.00) under the addendum through the month of May 1995 when she was served with a Notice to Quit by Lorraine Curnan. (See Transcript p. 145, 5/25/95). The service was made upon the plaintiff following one day of testimony at the formal administrative hearing before the Commission. The Notice to Quit stated lapse of time as reason therefor, despite the stated lease five year term from the 1993 lease and the 1994 addendum. Lorraine Curnan did not claim in the Notice to Quit, or any time thereafter, that Carrie Newton had no right or privilege to occupy the premises. No summary process action was brought to enforce this Notice to Quit.
On May 18, 1995, Nay 25, 1995 and September 14, 1995, the Commission held formal hearings regarding Carrie Newton's application. On July 7, 1995, the Commission rendered a decision denying the application pursuant to Connecticut General Statutes30-47(6) stating Carrie Newton did not have proper authority to make the application and that the premises was unsuitable for the permit. The decision was later affirmed by the Commission on November 16, 1995 following a hearing to supplement the record.
The Commission in this decision ruled that no valid lease existed since no original lease was available, and that because Ms. Newton had not paid fair market rental value for the premises since the May 1995 Notice to Quit, the possession of the premises reverted to the owner. Without a tenancy, the Commission concluded there was a lack of authority and unsuitable premises.
Upon review of all the evidence presented to the Commission at the formal hearings, it is clear that the plaintiff has occupied and continues to occupy the premises known as 342 Bantam Road, Litchfield, Connecticut. Ms Newton began her tenancy in 1993 CT Page 5679 following the execution of a lease for the premises which was personally guaranteed by Ms. Newton. This lease was amended by an addendum executed by Carrie Newton, Gary Copeland and Martin Curnan. The lease terms were later combined into one document and executed by Ms. Newton, and Mr. and Mrs. Curnan in September of 1994. Ms. Newton enjoyed a peaceful tenancy until March of 1995 when she first learned there were problems associated with the lease.
Ms. Newton applied for a liquor permit in August 1994. This application was accepted in October 1994. At the time of her application there were no disputes as to the legitimacy of her tenancy. Therefore at the time of her application she had the proper authority to request the permit.
The question of the validity of her tenancy was first raised when it was learned in March of 1995 from the Department of Liquor Control that there had been a change in ownership of the property. Prior to March 1995, Ms. Newton had received no information from the Curnans that Martin Curnan no longer owned the premises. In fact, Martin Curnan continued to accept and negotiate the rent checks made payable to him by Ms. Newton. (See Record Document No. 8). Thus, without any indication from the Curnans, there was no way for Ms. Newton to have known that there was a problem with the lease that had been executed by all the parties in September of 1994. Likewise, any change in ownership would not as a matter of law affect the validity of the existing lease.
On May 24, 1995, Ms. Newton was served with a Notice to Quit by Lorraine Curnan stating as reason therefor, lapse of time. However, the plaintiff contends in this appeal that this Notice to Quit did not change Ms. Newton's right to occupy the premises because of the valid five year lease executed in September, 1994. The general rule of law is that service of a Notice to Quit does not terminate the right of a tenant to occupy the premises; rather it simply relieves the tenant of her obligation to pay "rent" during the pendency of the summary process action which may be commenced. Sippin v. Ellam, 24 Conn. App. 385 (1991). Thus, Ms. Newton at worst, may be viewed as a tenant at sufferance since she came into possession of the premises rightfully, and continues in possession after her right there may have been terminated.O'Brien Properties, Inc. v. Rodriquez, 215 Conn. 367 (1990). However, the issue of her tenancy or holding over must be addressed in a summary process action, not by an administrative body such as the Liquor Control Commission. (See Connecticut General Statutes CT Page 5680 Section 47a-68 et seq.). Ms. Newton has maintained throughout these proceedings that she does have the right to occupy the premises and that any eviction proceeding would be vigorously challenged.
The Commission concluded, in error, that even if Ms. Newton was a tenant at sufferance, she breached the obligation of a tenant at sufferance to pay fair rental value during her occupancy. The general rule of law in Connecticut is that once a Notice to Quit is served, the tenant has no obligation to pay "rent". Sippan v.Ellam, 24 Conn. App. 385. If the landlord wishes to collect use and occupancy payments, it is her obligation to file a motion with the Housing Session, which was not done in this case. (See C.G.S. § 47a-68, et seq.).
The issue of collection of use and occupancy must be addressed in the Superior Court Housing Session alone which has the jurisdiction, by statute, to decide and order the payment of use and occupancy following a motion for such payments as made by the landlords. (See C.G.S. § 47a-68 et seq.). Therefore, it was an abuse of the discretion and statutory authority afforded the Commission for it to rule on the issue of nonpayment of rent for use and occupancy during a tenancy at sufferance, since the Housing Session alone has jurisdiction to decide that issue. Rivera v.Santiago, 4 Conn. App. 608 (1985), 495 A.2d 1122, 1123.
Following the service of the Notice to Quit in May 1995, Lorraine Curnan did not take further action to enforce the Notice to Quit nor did she or any representative make a request for use and occupancy. Thus, Lorraine Curnan has not taken the proper steps to enforce any rights she may have for use and occupancy during the tenancy at sufferance. Bushnell Plaza Development Corp. v.Fazzano, 38 Conn. Sup. 683, 460 A.2d 1311 (1983).
Also in support of its denial of the application, the Commission concluded that because no original lease could be produced, that no valid lease existed. This conclusion is not supported by any statutory law or case law. The Commission failed to cite any precedent which requires that an original lease be produced with an application for a liquor permit. (See Transcript pp. 124-128, 5/18/95). It would be unreasonable and contrary to accepted business practice to expect a landlord to return an original lease to the tenant rather than keep it in its possession. Therefore, this requirement as stated by the Commission is arbitrary and illegal, and in excess of its statutory authority. CT Page 5681
The evidence as presented to the Commission reveals that a valid lease was presented to the Department of Liquor Control. Ms. Newton sent a copy of a fully executed lease dated September 29, 1994 to the Department to be included with her application. This lease contained the signatures of all those parties who at that time represented themselves as proper tenants and landlords. The Curnans at the administrative hearings first contended that this lease was invalid because they did not sign the document, although Mrs. Curnan admitted she had received the original from Ms. Newton. Their attorney, at length, attempted to persuade the Commission through argument that their signatures on the copy were fraudulent, however, no substantial proof was ever provided on this point.
Even without the 1994 written lease, a valid tenancy existed by virtue of the 1993 lease and 1994 addendum. It is a canon of contract law that more than one document can constitute an agreement. Mongillo v. Commissioner of Transportation, 214 Conn. 225
(1990). The intentions of the parties to create one contract is evidence that two documents are to be viewed as one. Clearly, here, where the addendum indicates that the 1993 lease terms were to be included, there exists a lease in these two documents.
Thus, with the existence of a valid lease, either in the September 1994 written lease or the combination of the prior lease and addendum which were combined in the second lease which was submitted to the Department of Liquor Control, the denial of the plaintiff's application on the basis of lack of authority was in excess of the statutory authority of the Commission and was clearly erroneous in view of the reliable and substantial evidence on the whole record. Therefore, this court vacates the decision of the Commission and sustains the plaintiff's appeal.
PICKETT, J.