**In re CAPP INDUSTRIES, INC., Debtor.**

**Barry Strickland, Administrator of the Estate of Margaret Cappiali, Claimant,**

v.

**Capp Industries, Inc., Debtor.**

No. 98–51720.

United States Bankruptcy Court, D. Connecticut.

Jan. 9, 2001.

Ira B. Charmoy, Fairfield, CT, for the debtor.

Timothy D. Miltenberger, Coan, Lewendon, Royston & Gulliver, New Haven, CT, for the claimant.

## ORDER ON OBJECTION TO CLAIM AND ADMINISTRATIVE EXPENSE

ALAN H. W. SHIFF, Chief Judge.

Barry Strickland, the administrator of the Estate of Margaret Cappiali ("Claimant") filed a proof of claim and a request for the payment of an administrative expense for the use and occupancy of a ga-

1. The date of John Sr.'s death does not appear in the record.

2. In his post-trial memorandum, the Claimant decreased the amount claimed for vehicle storage to $112,000.00 based on a revised

rage and adjacent land located at 36–38 St. Rochs Avenue, Greenwich, Connecticut. Capp Industries, Inc. ("Debtor") objected to both.

## BACKGROUND

The St. Rochs property was the location of the Cappiali family home and a garage /office building ("garage"). John Cappiali lived at that home all of his life. The Cappiali family has also used the St. Rochs property to run family businesses since John Cappiali's grandfather ("John Sr.") operated a construction business in the 1920s. In 1988, John Cappiali formed Capp Industries, Inc. which utilized the garage and adjacent land. On John Sr.'s death,[1] his widow, Margaret Cappiali, inherited the St. Rochs property, which continued to be used as a family residence and by Capp Industries. In 1989, Margaret Cappiali died, and Plato Eliades was appointed administrator of her probate estate. The use of property by the family and Capp Industries continued as before her death. Upon Plato Eliades's death in May 1997, the Claimant was named successor administrator.

On September 4, 1998, the Debtor commenced this chapter 11 case. On March 27, 2000, the Claimant filed an amended proof of claim in the amount of $290,640 for the use and occupancy of the garage and adjacent land. *See* Claimant's Exh. 1. On April 13, 2000, the Claimant filed a request for the payment of a $48,353.50[2] administrative expense for the use and occupancy of the same space. *See* Claimant's Exh. 2.

## DISCUSSION

██ Under Connecticut law, "[a] tenant at sufferance is not obligated to pay rent but only the reasonable rental value

assumption that the Debtor stored only five vehicles on the property. The Claimant did not file an amended request for administrative expenses.

of the premises as use and occupancy.... A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated...." *O'Brien Properties, Inc. v. Rodriguez*, 215 Conn. 367, 371–372, 576 A.2d 469 (1990). *See also Commissioner of Transportation v. Dock, Inc.*, 1995 WL 779098, 4 (Conn.Super.1995). However, "[u]se and occupation is not, in itself, a basis upon which to find liability; there must be, as in the case of an implied contract, at least an intent [by the owner] ... to charge and an intent by the [occupier] ... to pay, or circumstances such that [the owner] expected payment." *Commissioner of Transportation v. Textron Inc.*, 40 Conn.Supp. 202, 205, 485 A.2d 1373 (1984).

 It is apparent that Capp Industries, and then the Debtor, used and occupied the garage and adjacent land until Margaret Cappiali's death under an arrangement whereby those entities would maintain the property, and no money was charged for rent. *See* Claimant's Exh. 5. Plato Eliades then permitted that use after her death. The first suggestion of a change in that arrangement was not until six years later when Plato Eliades's sent a February 17, 1995 letter to John Cappiali:

> I must close out this entire issue as I have allowed you too much time and uncontrolled use of the property. I urge you to provide me immediately with a proper accounting and a bona fide offer of purchase. Otherwise, I shall place the property in the hands of a realtor.

*See* Claimant's Exh. 4.

Louis Spizzirro, attorney for the Debtor and John Cappiali, responded in a letter dated March 7, 1995:

> [Your] letter raises the issue of rent from John Cappiali or Capp Industries for the first time. As you are well aware, Capp Industries Inc. and John Cappiali occupy this property under an arrangement with the estate which allows them to remain on the premises rent free while safeguarding and managing the property of the estate.

*See* Claimant's Exh. 5.

Neither Plato Eliades nor the Claimant refuted the existence the arrangement. Indeed, the Claimant admitted that he did not know whether or not there was any such arrangement. *Transcript*[3], 15–16; 26. Therefore, the Court concludes that such an arrangement existed, at least until the Claimant attempted to terminate it. *See infra* at 122.

Under Connecticut law, "the administrator stands in the shoes of the decedent." *Holzmaier, v. Associated Internists of Danbury*, 1998 WL 144980, 1 (Conn.Super.1998). Therefore, since Margaret Cappiali, as owner of the property, could have terminated the arrangement and demanded rent from the Debtor, as well as money for its use and occupancy from the date of the demand, so could Plato Eliades, as administrator of her probate estate. As noted, there is no persuasive evidence that he exercised those rights. The Claimant, as successor administrator, had the same rights. If the Claimant had proven[4] that he terminated the arrangement, the Debtor would have been a tenant at sufferance in the garage and adjacent land, and it would be obligated to pay the fair market value for that use and occupancy. *O'Brien Properties, supra*, 215 Conn. at 371–372, 576 A.2d 469.

The Claimant testified that in April 1997[5] and during 1998, *inter alia*, he re-

---

3. *Transcript* references the August 23, 2000 trial.

4. "... the creditor has the ultimate burden of proving its claim by a fair preponderance of the evidence." *In re RBS Industries*, 115 B.R. 419, 422 (Bankr.D.Conn.1990), citing *In re Central Rubber*, 31 B.R. 865, 867 (Bankr. D.Conn.1983).

5. The Claimant had been involved with the Margaret Cappiali Estate since 1996 when he represented one of the heirs during the Virginia state court proceedings.

jected any asserted arrangement and requested the payment of monetary rent:

> Attorney Miltenberger: Did you ever tell Capp Industries that the Estate of Margaret Cappiali did not agree to that arrangement?
>
> Claimant: Yes, I did.
>
> Attorney Miltenberger: And how was that? When did you tell them that?
>
> Claimant: Pretty much every time we spoke. That would be in the courtroom in Hopewell, Virginia [probate proceedings] in April '97, and a couple of times on the telephone we had occasion to talk during 1998. I always maintained that I wanted all rents turned over to me, and I wanted a complete accounting, and that I was not in agreement and unaware of any arrangement that he should stay there rent free to maintain [the] property. *Transcript*, 15–16.

The Claimant did not offer any evidence of the date he claims he terminated the arrangement other than those vague references. To the contrary, he admitted that he did not formally undertake any efforts to evict the Debtor. *Transcript*, 36.

John Cappiali denied that the Claimant rejected the arrangement and demanded the payment of monetary rent:

> Attorney Charmoy: Did anyone, the estate or anybody else, to your knowledge, ever make a demand for rent from Capp Industries?
>
> Witness: No
>
> . . .
>
> Attorney Charmoy: Did anybody ever make a demand for use and occupancy, other than this suit right now for use and occupancy [from] Capp Industries?

Witness: [No]

*Transcript* at 114.

Accordingly, it is concluded that the Claimant has not satisfied his burden of proving that he terminated the arrangement. But even if he did, his claim for use and occupancy must be disallowed, and his request for payment of an administrative expense must be denied, because there is insufficient persuasive evidence to establish a starting date for that obligation.[6]

Moreover, it is noteworthy that there was insufficient evidence to prove the fair market value of several of the elements of the claim and administrative expense. For example, with respect to the garage, not taking into account the rental value of vehicle storage in the garage,[7] there was no evidence on the fair market value of the garage for any time other than 1998. Thus, the portion of the claim which references any other times must be disallowed.

Regarding the value of the use and occupancy of the garage and adjacent property for the storage of vehicles during the pre-petition and administrative period, the Claimant's expert testified that a comparable rent in 1998 would be $200.00 per month per vehicle. *Transcript* at 92–93. The Claimant's amended proof of claim, Claimant's Exh. 1, assumed that eight vehicles were stored in the garage space, but he testified that he assumed that only five vehicles were stored. *See Transcript*, 23. Of more significance, the Claimant offered no evidence of the number of vehicles in the garage and adjacent land at any particular time, and that is fatal to a claim based on dollars per vehicle per month.

Further, as to the right of payment of administrative expense, the Claimant produced no evidence as to whether any vehi-

---

**6.** As noted, the Claimant's proof of claim reaches back to the date of Margaret Cappiali's death, notwithstanding the fact that the rental arrangement was in effect.

**7.** As noted, *supra* at 120, the Claimant's March 27, 2000 amended proof claim was for $290,640. That amount consisted of

$111,440 for the fair rental value of the garage and an additional $179,200 for the storage of vehicles in the garage and on adjacent land. *See* Claimant's Exh. 1; *Transcript, 88*. On April 13, 2000, the Claimant filed a request for the payment of a $48,353.50 administrative expense for the use and occupancy of the same space. *See* Claimant's Exh. 2.

cle was owned by the Debtor or was stored for its benefit. However, John Cappiali testified, as did his sister Josephine Cappiali, that approximately half of the garage area was occupied by his personal "monster show truck" and its 60 inch tall tires. *See Transcript*, 44; 109. He also testified that he keeps a 23 foot boat, personal motorcycles, family cars and two pick-up trucks that were used for him personally and by the Debtor. *See Transcript*, 115.

Accordingly, the Claimant's claim is disallowed, his request for the payment of an administrative expense is denied, and IT SO ORDERED.