[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This lawsuit involves the dispute over the ownership and control of a beach house located at 1215 Fairfield Beach Road, Fairfield, CT. The plaintiff is the record title owner of the property and the defendant is her sister-in law, the sole occupant of the beach house. The beach house was originally acquired over forty years ago for general family use by the prior generation. This type of family use of a beach house has been the source of much litigation. Hackbarth v. Hackbarth, Superior Court, judicial district of New Haven, Docket No. 409600 (June 16, 1999, Levin, J.); Gangemi v. Zoning Board of Appeals, 54 Conn. App. 559, 561-62
(1999).
 PROCEDURE
Shortly after the plaintiffs summary process complaint was filed, this case was granted Complex Civil Litigation status. The only defendant, Karen Anthony, filed an answer, special defenses, set-offs and counterclaims to which the plaintiff replied. The trial commenced less than six weeks after the complaint was issued.
The plaintiffs complaint, originally filed in the Superior Court Housing Session, judicial district of Fairfield at Bridgeport, is in two counts. Both counts sought relief by way of summary process and claim "a judgment for immediate possession of the premises" located 1215 Fairfield Beach Road, Fairfield, CT. The First Count alleges that: "The defendant, Karen Anthony, originally had the right or privilege to occupy the premises but such right or privilege has terminated." The Second Count alleges that: "The defendant, took possession of the premises pursuant to the lease, and still occupies the same. The lease has expired by lapse of time." CT Page 218
The defendant denies the salient portions of the allegations and has filed eleven special defenses. two set-offs and five counterclaims. The special defenses are as follows: laches, equitable estoppel, mandatory compensation pursuant to General Statutes § 47-30, no standing because the plaintiff has no title and is not the owner of the premises, no standing because the plaintiff is not an "Owner" or "Landlord" of the premises as defined in General Statutes § 47a-1, unclean hands, the defendant is the "Owner" of the premises as defined by General Statutes § 47a-1(e), Vincent Anthony was not joined as a necessary party, unjust enrichment, the notice to quit is equivocal, and this lawsuit is invalid and void because it violates General Statutes § 47a-15a
having been issued and/or served within the statutory grace period.
The two set-offs claim: compensation for improvements made to the premises by the defendant under General Statutes § 47-30, and unjust enrichment pursuant to improvements, taxes and other expenses related to the premises paid by the defendant.
Counts Six and Seven of the original counterclaim were withdrawn during trial leaving five counts of the counterclaim remaining. By way of relief the remaining counterclaims request: monetary damages, a conveyance of a life use in the premises to the defendant and other relief as the court deems equitable and just. The five counts of the counterclaim allege: constructive fraud, unjust enrichment, failure by the plaintiff to pay the defendant for the improvements to the premises in violation of General Statutes § 47-30, resulting trust and constructive trust.
The plaintiff filed a Motion to Strike addressed to the special defenses, set-offs and counterclaims, on the basis that they were improperly joined in the plaintiffs summary process action. After the Motion to Strike was denied, the plaintiff filed a reply to the special defenses and answers to the set-offs and counterclaims.
The court denied the Motion to Strike in its entirety on the following basis: the ultimate issue in a summary process action is the right to possession. Rosa v. Cristina, 135 Conn. 364, 365 (1949). The defendant's special defenses alleging ownership and entitlement of possession are proper special defenses to a summary process complaint. Urban v. Prims,35 Conn. Sup. 233, 236 (1979). Evidence of improvements made by the defendant can be offered as proof of ownership. The counterclaims for constructive trust and/or resulting trust are proper defenses and claims in a summary process action. Filosi v. Hawkins, 1 Conn. 634, 638-40
(1984). Equitable defenses are permitted in summary process actions.Southland Corp. v. Vernon, 1 Conn. App. 439, 447 (1984). Waiver and estoppel have been recognized by our courts as proper issues in summary CT Page 219 process. Fort Orange Barbering Co. v. New Haven Hotel Co., 92 Conn. 144,149-50 (1917); Club Road Corp. v. Whitehead, 34 Conn. Sup. 580, 583
(1977). These claims, including that of unjust enrichment, all involve mixed issues of fact and equity. Cohen v. Cohen, 182 Conn. 193, 203
(1980). In general, claims of money damage by either party to a summary process action are not proper. Fellows v. Martin, 217 Conn. 57, 70
(1991). "Equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." CumberlandFarms, Inc. v. Dairy Mart, Inc., 225 Conn. 771, 777 (1993); Fellows v.Martin, supra, 217 Conn. 62. In this case, all the evidence supporting the money damage special defenses, set offs and counterclaims will be admissible in the proof of the above mentioned proper defenses. Harveyv. Pilewski, 37 Conn. Sup. 889, 890-91 (1982); Steinegger v. Fields,37 Conn. Sup. 534, 537 (1980). In the interest of judicial economy, the Motion to Strike was denied. The court commenced the trial one week after denying the Motion to Strike.
 FACTS
After consideration of the testimony and exhibits the court finds the following facts:
Vincent Anthony and Lena Anthony lived in Fairfield, Connecticut. They had seven children. Their daughter, Arlene Norling, is married to David Norling and is the plaintiff. Their son, Richard Anthony, married Karen Anthony on December 4, 1976. Richard died on September 27, 1998. Karen Anthony is the defendant. On April 21, 1959 Vincent Anthony, using his funds, purchased a beach house at 1215 Fairfield Beach Road, Fairfield CT from Frances V. Pistey. Frances V. Pistey was not related to the Anthony family The deed contained tax stamps evidencing a $10,000 consideration.Exhibit 8. On November 22, 1963 Frances V. Pistey conveyed to Ida Lamy an undivided one-half interest in the creek side lot opposite 1215. Both deeds were recorded on the same day, November 29, 1963.
At the time of its purchase the beach house was not winterized. Exhibit7. Although Vincent Anthony purchased the property using his money, title was taken in the name of his sister, Ida Lamy, of West Hartford, CT. Ida Lamy was not aware title to 1215 and the creek side lot had been taken in her name. Title to either lot was never in the name of Vincent Anthony or Lena Anthony. The property at 1215 Fairfield Beach Road consisted of a 25' x 127' parcel running from the beach on Long Island Sound to an easement known as Fairfield Beach Road. It contained the beach house. Directly across the street was the creek side lot, approximately 54' x 164' in size. There was no house on that parcel known as 1220 Fairfield Beach Road. That creek side lot is not the subject of this lawsuit, but was referred to in various documents and the testimony of witnesses. CT Page 220
For many years the family of Vincent and Lena Anthony used the beach house as a vacation spot for their entire family. Children and other relatives would come and go on a regular basis. No one requested nor obtained permission from Ida Lamy to use the premises at any time.
Over the years, Vincent Anthony conveyed various properties and businesses that he owned in Connecticut and Florida to his children. Richard Anthony received title to a commercial building in Bridgeport as well as the ownership of the used car sales business at that location in conveyances from Vincent Anthony. Richard also received on undivided one-half interest in the 54' X 154' creek side lot 1220 Fairfield Beach Road, from Ida Larny by a quit claim deed dated January 7, 1970 and recorded on March 9, 1970. Exhibit 18. There was no evidence introduced at trial concerning the other one-half interest in 1220. Since Richard Anthony and the defendant built a house on 1220, which was later sold to a third party, the court assumes that title to 1220 was vested in the name of one or both of them.
In 1966, Arlene Norling, recently married to David Norling, was interested in purchasing a house at 94 Fairfield Beach Road. Her bid was accepted. She and her new husband David were not I able to obtain a mortgage even though her husband would co-sign the note. In order for them to obtain a mortgage from Peoples's Bank, it was necessary that the property at 1215 (also known as 135) be conveyed to Arlene Norling.Exhibit 12. She purchased 94 Fairfield Beach Road on September 15, 1966 using the proceeds of the People's Bank mortgage. Exhibits 14 and 15. Just prior to that transaction, on August 23, 1966, she obtained record title to 1215 from Ida Lamy by quit claim deed. Exhibits 16 and 55. The plaintiff paid no monetary consideration in obtaining title to 1215. The People's Bank mortgage commitment required that title to both 94 and 1215 be in the plaintiffs name and that the loan be secured by a first mortgage on both properties. Ida Lamy knew that she was conveying 1215 to the plaintiff when she signed the quit claim deed. The proceeds of the mortgage loan from People's Bank was used only for the 94 purchase but the mortgage was secured by both parcels. Exhibit 15. From April 21, 1959 until August 23, 1966 the record title to 1215 had been in the name of Ida Lamy. Since August 23, 1966 record title to 1215 has always been in the name of Arlene Norling.
In 1969, David Norling was transferred out of Connecticut. The property at 94 was sold. The People's Bank mortgage was paid off and its lien was released on both 94 and 1215. From 1959 through 1969, Vincent Anthony and Lena Anthony and their family continued to use 1215 as they had in the past. By this time the beach house had been winterized. CT Page 221
The first winter use of the house was in 1975 by the plaintiffs sister, Julie, and her husband. Thereafter other relatives used the property periodically during the winter. The plaintiff did not reside in Connecticut from 1969 until 1992. She moved to her current home in Madison, Connecticut in 1992.
Richard Anthony married Karen Anthony on December 4, 1976. It was his first marriage. It was Karen Anthony's second marriage. She had three teenage daughters by her first marriage. The five of them occupied 1215. At all times that the defendant lived in 1215, she was aware that record title to 1215 was in the name of the plaintiff. The Richard Anthony family occupied 1215, with plaintiffs permission, for a short while after their marriage until they found another residence. A few years later they occupied 1215 during the winter. In the early 1980's Karen Anthony, Richard Anthony and the daughters lived at 1215 year round. The three daughters grew up in the house. They have not lived there for a number of years. Karen Anthony has lived in 1215 since the early 1980's and continued to occupy it after Richard's September 27, 1998 death. Richard Anthony continuously occupied 1215 from the early 1980's until his death. At no time during the occupancy did they pay any rent, use and occupancy, purchase price or mortgage payments to anyone.
Vincent and Lena Anthony lived in a home elsewhere in Fairfield, Connecticut and used the beach house for summer vacations. They moved to Vero Beach, Florida in the mid 1980's. Although Vincent would occasionally visit Connecticut and stay at 1915 Lena Anthony made it a practice to stay in the beach house all summer long. Other family members continued to use 1215 during the summer. Lena died on September 19, 1989. Vincent died on March 29, 1999. Richard and Karen Anthony continued to reside in the beach house during family member's use.
Vincent Anthony executed a will in Florida in 1999. Exhibit 45. in Article Second he listed his seven children including the plaintiff and then added, "It is my specific intention not to provide for my daughter, ARLENE NORLING, not out of lack of love for her but because I know she has means to provide for herself" There was no mention in the will of 1215. The residue of the estate was left in trust pursuant to a Revocable Trust Agreement. Exhibit 140. No assets were listed in the Schedule attached to the Revocable Trust Agreement other than a token $10.00. 1215 was not included in the inventory filed in Florida in the Estate of Vincent J. Anthony, a/k/a Vincent James Anthony. Exhibit 139.
Substantial improvements were made to the beach house. Some were repairs necessitated by storm damage. On one occasion insurance proceeds were used. Some examples of the improvements are: two replacements of siding, roof replacement, two rear deck replacements, new second floor CT Page 222 front deck, replacement of first floor front deck, updating of the heating, electric and plumbing systems, window replacements, redesign of the upstairs rooms, redecoration of the entire interior including flooring and walls, new appliances and the elevation of the house on a new foundation to comply with federal flood insurance requirements. All of these improvements were made and paid for prior to this litigation. All of these improvements occurred while the defendant occupied 1215. The parties dispute the amount of payments, who made the payments, the need for the improvements and the degree the improvements increased the fair market value of the beach house.
 CONCLUSIONS ON THE SUMMARY PROCESS COMPLAINT
The court finds the following facts: The plaintiff, Arlene Norling, is the record title owner of the property at 1215 Fairfield Beach Road, Fairfield, Connecticut. The defendant, Karen Anthony, is occupying the residential premises at 1215 Fairfield Beach Road, Fairfield, CT. There was never a written or oral lease for the occupancy by Karen Anthony. There was no other agreement for the occupancy by Karen Anthony. At all times during the occupancy by Karen Anthony, Arlene Norling was the record title owner of the property. At no time did Karen Anthony pay any rent or use and occupancy. There was never any agreement between the plaintiff and the defendant that any rent or use and occupancy be paid. There was never any agreement between the plaintiff and her brother, Richard Anthony, that any rent or use and occupancy be paid. The defendant admitted in her answer that she originally had the right or privilege to occupy the premises.
The court finds that the defendant, Karen Anthony, originally had the right or privilege to occupy the premises and that such right or privilege to occupy the premises has terminated. The court further finds that the notice to quit served on Karen Anthony on November 27, 1998 meets the requirement of General Statutes § 47a-23 (a)(3), the other statutory requirements and was timely and properly served. Exhibit 1. "When one originally had the right or privilege to occupy such premises but such right or privilege has terminated." General Statutes § 47a-23
(a)(3). The court further finds that the time designated in the notice to quit for the defendant to vacate the premises, December 10, 1998, has passed and the defendant, Karen Anthony, still continues in possession of the premises. The plaintiff has proven the allegations of the First Count.
The Second Count pleads in the alternative and alleges "lapse of time." This court has already found that there was no lease, either oral or written, and no agreement to pay rent and or use occupancy. The Notice to Quit states as its first reason: "The oral lease agreement has terminated CT Page 223 by lapse of time." The plaintiff has failed to establish that there was any oral lease agreement or any other agreement for the occupancy of the property. This court concludes that the defendant was occupying the premises as a tenant at sufferance. "A tenancy at stifferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated." O'BrienProperties, Inc. v. Rodriguez, 215 Conn. 367, 372 (1990); Welk v.Bidwell, 136 Conn. 603, 608-09 (1950). "The mere act of holding over does not create a new tenancy. General Statutes § 47a-3d; Webb v. Ambler,125 Conn. 543, 551 (1939). Instead, the holdover tenant becomes a tenant at sufferance with no legal right to possession." FJK Associates v.Karkoski, 52 Conn. App. 66, 68 (1999). As a matter of law, lapse of time is not a valid reason for the eviction of a tenant at sufferance.Bushnell Plaza Development Corporation v. Fazzano, 38 Conn. Sup. 683, 686
(1983); Lonergan v. Connecticut Food Store, Inc., 168 Conn. 122, 130
(1975).
There are four reasons set forth in the plaintiffs notice to quit. As to these four reasons the court concludes: (1) "lapse of time" is not a valid reason for an eviction of a tenant at sufferance; (2) "Your once right or privilege to occupy the above described premises has been terminated," has been proven by the plaintiff and is alleged in the First Count of the summary process action; (3) "You have caused substantial and wilful destruction of a part of the dwelling premises" was not alleged in the complaint and thus cannot support a summary process judgment; and (4) "I intend to use the premises as my principal residence" is a valid statutory reason under General Statutes § 47a-23 (a)(4)(c) for eviction but was not alleged in the complaint. There was no evidence that Arlene Norling intended to leave her Madison, CT home and reside in 1215 as her principal residence.
This court, therefore, finds the issues on the Second Count for the defendant, Karen Anthony.
The court finds the issues on the First Count for the plaintiff, Arlene Norling.
The remaining matter to be decided as to the plaintiffs complaint is whether or not a judgment for immediate possession in favor of the plaintiff as against the defendant should enter. In addition, the court must consider the relief requested by the defendant's pleadings. This court now turns to the eleven special defenses, two set-offs and five counterclaims to decide these issues.
 CONCLUSIONS AS TO SPECIAL DEFENSES
CT Page 224
I. First Special Defense:
The first special defense filed by the defendant, Karen Anthony, states: "This action is barred by the Doctrine of Laches." "Laches and equitable estoppel appear to be equitable defenses applicable in summary process cases." Castaldo v. Castaldo, Superior Court, judicial district of Fairfield, Housing Session at Bridgeport, Docket No. SPBR 94-1228656 (July 19, 1995, Tierney, J.) (15 Conn.L.Rptr. 135) (1995 Ct. Sup. 8548). "Laches consists of an inexcusable delay which prejudices the defendant. . . . Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . Absent prejudice to the defendant, the mere lapse of time does not constitute laches." Federal Deposit InsuranceCorp. v. Thompson, 56 Conn. App. 82, 89 n. 4 (1999). The defendant must sustain the burden of proof as to the special defense of laches. FederalDeposit Ins. Corp. v. Voll, 38 Conn. App. 198, 211, cert. denied,235 Conn. 903 (1995). The defendant has failed to prove any prejudice to her by the passage of time and the plaintiffs failure to earlier evict the defendant.
This was a family beach house. At all times since 1976 the defendant was married to the plaintiffs brother and, therefore, was a member of the family. During a substantial portion of the defendant's occupancy of the beach house, other family members used it for summer vacationing. Family members never paid any rent or use and occupancy to anyone for the use of the premises. There never was any agreement or requirement that they do so. Neither Ida Lamy nor Arlene Norling were ever requested to give consent for its use. The only claim of prejudice that the defendant has advanced are her payments made for building improvements, repairs and real estate taxes. This court will deal with those issues under the defendant's claim of unjust enrichment.
During 1997, the defendant's husband, Richard Anthony, was suffering from a terminal disease. He died September 27, 1998. Shortly thereafter the plaintiff discussed with the defendant her continued occupancy. Efforts were made by the plaintiff to remove the defendant from the beach house. Two other summary process lawsuits were filed in 1998 and 1999. They were withdrawn for technical reasons. The court holds and finds that, although there was a delay, it was not lengthy. The litigation followed in swift succession. In addition, at trial the defendant produced insufficient proof of prejudice in the plaintiffs delay in commencing this litigation.
The issues on the First Special Defense are found for the plaintiff.
II Second Special Defense: CT Page 225
The defendant is claiming that the plaintiff is estopped from evicting the defendant. She files a lengthy special defense in which the history of the property is delineated. The operative allegations of the second special defense state: "On or about August 23, 1996, at Vincent's direction, Ida Lamy conveyed The Premises to the plaintiff for the purpose of providing the appearance of ownership so the plaintiff could purchase other property and obtain financing to do so and for other reasons known to Vincent. Neither Vincent nor Lamy intended to convey legal or equitable title to the plaintiff" The special defense further alleges; "The defendant was married to Richard on December 4, 1976 in their home"; "Richard died on September 27, 1998"; "Richard lived at The Premises since 1966"; and "Richard and the defendant lived at The Premises since 1976."
The essential claim of the Second Special Defense is that the plaintiff is estopped from evicting the defendant by reason of statements that Vincent and Lena Anthony made to Richard and the defendant to the effect that they would be able to live at 1215 for the rest of their lives. The defendant claims that she and her husband relied on her in-law's statements in expending money and efforts to repair and improve 1215 and to pay the taxes and other expenses. All of these payments and efforts are alleged to be the defendant's financial detriment. This court will discuss the issue of the improvements and betterments being made to the premises under the defendant's unjust enrichment claim.
"There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." SKWReal Estate Limited v. Mitsubishi Motor Sales, AM, 56 Conn. App. 1, 8
(1999); W. v. W., 248 Conn. 487, 496-97 (1999).
There is no allegation in the Second Special Defense that the plaintiff, as the record title owner of the premises since 1996, did anything or made any statement to the defendant and/or Richard Anthony which was intended or calculated to induce the defendant to believe in the existence of certain facts, i.e., the defendant's right to life use. The allegations only refer to statements made by Vincent Anthony and Lena Anthony to Richard Anthony and Karen Anthony that they would have the right to occupy the premises for their rest of their lives. These promises of life use were made after 1966. At no time did Vincent Anthony or Lena Anthony own record title to 1215. The defendant has not made any CT Page 226 such allegations of title ownership in the Second Special Defense. The fact that the plaintiff permitted the defendant to occupy 1215 for decades is not proof that the plaintiff intended to create thereby a life use. Neither of the two elements of estoppel have been demonstrated by the evidence. The plaintiff did not make any statements to the defendant and the defendant did not rely on any statements of the plaintiff to her detriment.
"It is a fundamental rule as regards estoppel by conduct that the person claiming an estoppel must show that he exercised due diligence to know the truth, and that he was destitute not only of knowledge of the true state of things, but also of any convenient or available means of acquiring such knowledge." Linahan v. Linahan, 131 Conn. 307, 327
(1944). The defendant did not ask the plaintiff for permission to make all the improvements. She did not have her sign all the building permits as the record title owner. She did not review construction contracts with the plaintiff. She did not discuss with the plaintiff the Vincent and Lena Anthony promise of life use before making the improvements. She did not confer with the plaintiff as to the day to day arrangements on house management and payment of expenses. There is no evidence that Richard Anthony communicated "likewise on those subjects with the plaintiff. The court finds that the defendant and Richard Anthony failed to exercise due diligence to obtain the true state of things, and thus, are not entitled to the remedy of estoppel. State v. American News, 152 Conn. 101, 114
(1964).
The defendant also couches this special defense in terms of waiver. On occasion the terms waiver and estoppel have been used interchangeably.Novella v. Hartford Accident and Indemnity Co., 163 Conn. 552, 564
(1972). Waiver is the intentional relinquishment of a known right. It may be either express or implied. The four elements of waiver are: (I) the existence of a right or defense; (2) the opportunity to apply and use that right or defense; (3) the knowledge of the ability to use that right or defense; and (4) the actions of the party who possesses that right or defense, which amount to an intentional relinquishment of that right.Novella v. Hartford Accident and Indemnity Co., supra, 163 Conn. 561-62. An intention to relinquish the right is essential in a waiver. Breen vAetna Casualty and Surety Co., 153 Conn. 633, 643 (1966); Greenwich PlazaInc. v. Whitman and Ransom, Superior Court, judicial district of Stamford-Norwalk, Housing Session of Norwalk, Docket No. CV NO 9505-4081 (March 19. 1996, Tierney, J.) (1996 Ct. Sup. 1453).
The plaintiff concedes that she permitted her brother and the defendant to reside at 1215 more or less on a full time basis for many years until commencement of the first eviction action in late 1998. No rent was charged and no rent or use and occupancy was paid. The plaintiff was CT Page 227 aware of the major improvements made to the property in which insurance proceeds were used. The insurance policies were in the plaintiffs name. The plaintiff was not aware of many of the interior improvements made by her brother and the defendant. The plaintiff only gave explicit consent to make the storm repairs paid for by the insurance proceeds. The plaintiff testified that she was essentially aware of only the exterior improvements. This court finds that, except for certain interior decorating type improvements, the plaintiff knew or reasonably should have known that the repairs and improvements were being made to both the interior and the exterior of 1215. The plaintiff did not pay for the repairs or improvements other than paying for the insurance premiums against which policies claims were successfully made. No request was made of the plaintiff to make these payments except for the insurance proceeds. Karen Anthony, during the time she occupied 1215, was aware that legal title was recorded in the plaintiffs name.
Neither Richard Anthony nor the defendant ever attempted to obtain consent from the plaintiff for the improvements made other than the storm damage involving insurance claims. The plaintiff started eviction proceedings against the defendant shortly after Richard Anthony's death. The plaintiff is not seeking payment from the defendant of rent and/or use and occupancy in a separate action. Since this is a summary process action the plaintiff cannot request monetary relief in this litigation. The defendant argues that these facts amount to an implied waiver of the plaintiff's right to evict the defendants. There is no proof of an explicit waiver. None of these facts support the conclusion that the plaintiff waived the right, as the record title owner, to evict the defendant. There is no evidence that the plaintiff intentionally relinquished her right to evict the defendant. The defendant has failed to sustain her burden of proof on waiver.
The issues on the Second Special Defense are found for the plaintiff
III. Third Special Defense:
The Third Special Defense alleges: "Before any ejectment may be issued in this action, the plaintiff must compensate the defendant for all the improvements made to The Premises by her and/or Richard, pursuant C. G. S. § 47-30." This statute is entitled "Ejectment" and is found in the foreclosure section, not in the landlord/tenant section. There is no equivalent section for reimbursement for improvements in landlord/tenant summary process law. General Statutes § 47-30 reads as follows: "Final judgment shall not be rendered, in any action to recover the possession of land, against any defendant who has, in good faith, believing his title to the land in question absolute, made improvements on the land before the commencement of the action . . ." This statute, CT Page 228 called a "betterment" statute, is not applicable to and does not implicate the right to possession in summary process eviction actions.Fellows v. Martin, supra, 217 Conn. 62; O'Brien v. Flint, 74 Conn. 500,502, 508-10 (1902). Schleicher v. Schlecher, 120 Conn. 528, 535 (1935). Furthermore, there is no evidence the defendant thought she had title absolute. She only believed she had a promise of a life use. The statute continues: "if the value of the improvements exceeds the amount due for use and occupation, execution shall not be issued until the plaintiff has paid the balance to the defendant or into the court for his benefit." The defendant has the burden to prove the value of the improvements. She has expended substantial energy and documentation in doing so. There is no proof whatsoever in this case concerning the fair and reasonable use and occupancy of 1215. There was no such testimony by an appraisal expert, no such testimony by an occupant, no such testimony by any registered title owner and no such testimony by any real estate broker. No payments were ever made for rent or use and occupancy. No agreements were made for rent. During the summer of 1998, the "plaintiff asked her brother and the defendant to pay $600 a month for two months. This payment was to be for the reimbursement of real estate taxes. The payment was never made. The defendant and/or Richard Anthony never agreed to make the payment. No one testified that this $600 was the reasonable market value for the monthly use and occupancy of 1215, The defendant has failed to prove that the improvements exceeded the "amount due for use and occupation." Krasowskiv. Fantarella, 51 Conn. App. 186, 199 (1998).
General Statutes § 47-30 gives the defendant an election. "If the plaintiff elects to have the title confirmed in the defendant and, upon the rendition of the verdict, files notice of the election with the clerk of the court, the court shall ascertain what sum ought in equity to be paid to the plaintiff by the defendant or other parties in interest and, on payment of it, may confirm title to the land in the parties paying it." General Statutes § 47-30. The defendant filed no such notice with the clerk of the court. No such notice was offered in evidence. The defendant is claiming actual title and did not elect at any time that title be confirmed in the plaintiff The defendant's claim for reimbursement for improvements will be discussed in more detail in the Second Count, defendant's counterclaim. The decision on that Second Count, defendant's counterclaim renders this election under General Statutes § 47-30 moot.
General Statutes § 47-30 has been cited only twice by our appellate courts. There is no judicial gloss applying General Statutes § 47-30
as a special defense or counterclaim for reimbursement in a summary process action. Robinson v. Myers, 156 Conn. 510, 520-21 (1968) (Defendant, despite insufficient proof of adverse possession, was entitled to counterclaim for improvement damages, pursuant to General CT Page 229 Statutes § 47-30 on remand); Krasowski v. Fantarella, supra,51 Conn. App. 198-99 (Counterclaim for improvement damages under General Statutes § 47-30 is proper in a quiet title action.)
The defendant has failed to prove the Third Special Defense.
IV Fourth Special Defense:
This defense states: "The plaintiff does not have title to The Premises, and is therefore not an owner, and has no standing to maintain this action." The quit claim deed in evidence shows that the plaintiff acquired record title to 1215 from Ida Lamy on August 23, 1966 and continues to this date to have record title to the property. Under General Statutes § 47a-23 this is sufficient to prove that the plaintiff is the "owner" of the property. There was no evidence to indicate that the defendant has any higher title demonstrated by any documents on file in the Fairfield Land Records. No unrecorded title document were produced at trial. The recording of title in the plaintiffs name is sufficient for her to maintain a summary process action and grants her standing to maintain this action. Welk v. Bidwell, supra,136 Conn. 608. "When we have construed "owner' in the context of real estate, we have defined the term with relevance to title. When we say, a man has title to . . . [property], we mean, he is the owner of it; and visa versa." Lunn v. Cummings Lockwood, 56 Conn. App. 363, 372 (2000);Shelton v. Alcox, 11 Conn. 240, 249 (1874).
The defendant argues that this special defense is attacking the validity and completeness of the gift of 1215 to the plaintiff The defendant claims, "In this case, the plaintiff is not an "owner' because there never was a conveyance sufficient to pass legal title to the plaintiff." Defendant's Memorandum of Law After Trial. August 31, 2000,page 4. The defendant correctly notes that the plaintiff paid no monetary consideration to anyone on August 23, 1966.
The defendant incorrectly claims that the conveyance was not a completed gift. "The two requisites of a valid gift are a delivers of the possession of the property to the donee, and an intent that title thereto shall pass immediately to him." Main's Appeal, 73 Conn. 638, 640 (1901). A quit claim deed from Ida Lamy to the plaintiff was delivered and less than a month later recorded in the Fairfield Land Records. Immediately thereafter the plaintiff mortgaged the property with her father's knowledge in order to purchase a second property also on Fairfield Beach Road. She and her husband paid the monthly mortgage payments and on the sale of the second property paid off and released the mortgage on 12 15. The plaintiff kept the property insured in her name and paid the premiums. The Norlings shared the use of 1215 with other family members CT Page 230 after August 23, 1966. This is sufficient evidence of delivery of possession. McCook v. Coutu, 31 Conn. App. 696, 701 (1993). Ida Lamy intended to deed 1215 to the plaintiff because she was instructed to do so by her brother, Vincent Anthony. Vincent Anthony assisted the plaintiffs mortgage plans by arranging for the 1215 conveyance. There was no evidence that Vincent Anthony, Lena Anthony and/or Ida Lamy ever demanded a reconveyance of 1215 by the plaintiff after August 23, 1966.
The defendant argues that in 1959 Vincent Anthony never intended to convey title to Ida Lamy. Vincent Anthony paid for 1215 in 1959 and arranged for title to be taken in the name of his sister, Ida Lamy. He further requested his sister to quit claim to the plaintiff on August 23, 1966. He never requested the return of any title. Vincent Anthony gifted other property and assets to his other children. Vincent Anthony transferred only a small building lot and 1215 to the plaintiff. There was an intent to make a gift, the recording of a deed and the taking of possession and control by the donee. The court finds that the evidence satisfies the elements of a completed gift of 1215 to the plaintiff on August 23, 1966.
Whether or not the plaintiff is the actual owner of the property is a claim which this court will deal with in another section of this memorandum of decision. This court has found that the record title owner status of the plaintiff entitles her to standing.
The issues on the Fourth Special Defense are found for the plaintiff
V. Fifth Special Defense:
The defendant claims in this special defense that: "The plaintiff is not an owner or a landlord as defined in C. G. S. § 47a-1 et seq and has no standing to maintain this action." This is an issue of standing. General Statutes § 47a-1 defines "Landlord" and "Owner." General Statutes § 47a-23(a) states: "When the owner or lessor, or his legal representative, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of any land or building. . . ." There is no definition of I lessor in the statutes. "Owner" defined under §47a-1(e) "means one or more persons, jointly or severally, in whom is vested (1) all or part of the legal title to property or (2) all or part of the beneficial ownership and a right to present use and enjoyment of the premises and includes a mortgagee in possession." The defendant, by this special defense, claims that the plaintiff is not the "Owner" or "Landlord" and thus has no standing. This court finds that the plaintiff is the record title owner of the property and has been continuously since August 23, 1966 to the date of trial. She is the "owner" of 1215 as defined in General Statutes § 47a-1 and therefore has standing. Webb CT Page 231 v. Ambler, 125 Conn. 543, 552-53 (1939); McNeil v. Tyson,37 Conn. Sup. 624, 626-27 (1981); Welk v. Bidwell, supra, 136 Conn. 308.
The issues on the Fifth Special Defense are found for the plaintiff.
VI. Sixth Special Defense:
This special defense claims that "The plaintiff has unclean hands." This special defense invokes the equitable powers of the court. Equitable defenses are appropriate in summary process actions. Southland v.Vernon, supra, 1 Conn. App. 447.
"For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with `clean hands'. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice." McCarthy v. McCarthy, 55 Conn. App. 326, 335 (1999). "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." Bauerv. Waste Management of Connecticut Inc., 239 Conn. 515, 525 (1996). "Unless the plaintiffs conduct is of such character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." Id. 525.
There is animosity between the plaintiff and the defendant. Very strong feelings have been expressed by the defendant because the plaintiff started eviction proceedings shortly after the death of her husband. In support of her argument of unclean hands the defendant points to the substantial improvements and expenses paid by the defendant and/or her husband without reimbursement by the plaintiff as well as the timing of the eviction actions in the face of the high costs of the improvements and the promise of life use that was made by the plaintiffs mother and father. The defendant claims the plaintiff prepared false documents to assist her in this litigation. Exhibit 132. The defendant points to a number of inconsistencies between the plaintiffs testimony and that of other witnesses. This court finds that emotions are high. The defendant's proof falls short of the conduct necessary to invoke the clean hands doctrine. The defendant has failed to sustain her burden of proof as to the Sixth Special Defense. In addition, the plaintiffs suit does not seek equitable relief but immediate possession of 1215.
The issues on the Sixth Special Defense are found for the plaintiff.
VII. Seventh Special Defense: CT Page 232
This defense states: "The defendant is an owner of The Premises as defined in C.G.S. Sec. 47a-1(e), and, as a result, the plaintiff cannot maintain a summary process action against the I defendant." The court has already found that the plaintiff is an "owner" of the premises under General Statutes § 47a-1(e) by reason of the fact that she had record title to the property from August 23, 1966 to date. Consolidated DieselElectric Corp. v. Stamford, 156 Conn. 33, 37 (1968) The defendant has failed to prove that she has a deed to the property either recorded or unrecorded. She has failed in her burden of proof to show that she is either an owner or landlord as defined by General Statutes § 47a-1(e). Her occupancy at 1215 and the payment of expenses, repairs and improvements by themselves is not sufficient to prove "ownership."
She has alleged both a resulting trust and a constructive trust in her counterclaims. These are legal theories that, if proven, can establish that the defendant has a higher title than the plaintiff and thus is entitled to continued occupancy. The ultimate issue in summary process, is who has the greater claim to title in the property subject to equitable considerations. Southland Corp. v. Vernon, supra,1 Conn. App. 443; Zitomer v. Palmer, 38 Conn. Sup. 341, 345 (1982). A life tenant can be considered an owner. Zauner v. Brewer, 220 Conn. 176,190-92 (1991); Smith v. Planning Zoning Board, 203 Conn. 317, 323
(1987). These theories are contained in the Fourth and Fifth Counts. defendant's counterclaims. If the defendant is successful on either one of these counts, the issue raised this Seventh Special Defense will be rendered moot. If the defendant fails in her burden as to both of these counts, the issues on this Seventh Special Defense must also fail.
The defendant claims that she is an "owner" under General Statutes § 47a-1(e). General Statutes § 47a-1(e)(2) also defines owner as, "all or part of the beneficial ownership and a right to present use and enjoyment of the premises and includes a mortgagee in possession." The holder of a life estate is an "owner" under General Statutes §47a-1(e). One equal owner cannot evict another equal owner. Long v.Fredericks, Superior Court, judicial district of Hartford at Hartford, Housing Session, Docket No. HDSP 105504 (January 20, 2000, Tanzer, J) (26 Conn.L.Rptr. 13). If the defendant is the holder of a life estate, she cannot be evicted by the plaintiff. If the defendant prevails in her counterclaims and is awarded a life use in 1215, the issues on the plaintiffs complaint will be found for the defendant. Thus the Seventh Special Defense is moot.
The issues on the Seventh Special Defense are found for the plaintiff
VIII. Eighth Special Defense: CT Page 233
In this special defense the defendant claims that: "The plaintiff has failed to join Vincent Anthony of Vero Beach, Florida or his representative, as a party and he or his representative is a necessary party to this action." Vincent Anthony died on March 29, 1999. There was no evidence in this case that an estate for Vincent Anthony was ever opened or that there was a legal representative either appointed in Florida or Connecticut protecting of the assets and interests of I Vincent Anthony. During prior summary process litigation between the same parties, a motion to join Vincent Anthony as a party was filed by the defendant and thereafter withdrawn by the defendant. Norling v. Anthony, Superior Court, judicial district of Stamford-Norwalk, Complex Civil Litigation, Docket No. X05-CV 98-0174522 S. No motion to join Vincent Anthony and/or his personal representative, executor or administrator was made in this case by the defendant. Having I failed to file such a motion after it was assigned to Complex Civil Litigation, the defendant has waived that claim. In addition, the defendant has failed to prove that Vincent Anthony and or his estate is a "necessary party." General Statutes § 52-102; Gill v. Schimelman, 180 Conn. 568, 570-72 (1980). The issues in this case can be completely decided without joining Vincent Anthony and/or his legal representatives; 1215 is not included in the inventory of the Estate of Vincent Anthony. No monetary claim relating to 1215 is included in the inventory of the Estate of Vincent Anthony. Neither the will or the trust mentions 1215. There was no proof of any ancillary proceedings filed in Connecticut by the Estate of Vincent Anthony in connection with 1215. No interests of Vincent Anthony can be affected by a decision in this litigation
The issues on the Eighth Special Defense are found for the plaintiff.
IX. Ninth Special Defense:
The defendant's special defense states as follows: "The defendant has, in good faith, made improvements, paid taxes and other expenses related to The Premises for several years. Equity requires that before any ejectment may be issued in this action, the plaintiff repay the defendant for these expenses because otherwise, the plaintiff has been unjustly enriched." The plaintiff is seeking the statutory remedy of immediate possession, not the common law relief of ejectment. By using the word ejectment, the defendant has again invoked the ejectment rules under General Statutes § 47-30, couching them in equitable language. This court has already found that General Statutes § 47-30 does not apply to a summary process action in discussing the Third Special Defense. Furthermore, the defendant's claim of unjust enrichment will be discussed by this court in the Second Count, defendant "s counterclaim. CT Page 234
The issues on Ninth Special Defense are found for the plaintiff.
x. Tenth Special Defense:
This special defense claims as follows: "The notice To Quit upon which each of the Counts of the plaintiffs complaint are based is rendered equivocal by the plaintiffs withdrawal of one or "more prior actions and the service of a second notice to Quit on the defendant on January 23, 1999." This same issue was raised in the defendant's Motion to Dismiss, which was denied by this court. This court has already found that the notice to quit dated November 20, 1998 and served November 27, 1998 in this case met the statutory requirements and was timely and properly served. Exhibit 1. A notice to quit must be unequivocal. An equivocal notice to quit is void. Jefferson Garden Associates v. Greene,202 Conn. 128, 143 (1987). A proper notice to quit is a mandatory condition precedent to a summary process action, and its absence is a subject matter jurisdictional flaw. Lampasona v. Jacobs, 209 Conn. 724,730 (1989). A number of cases have found that subsequent notices to quit have been rendered equivocal by reason of the service of an earlier notice to quit. The defendant did not adequately articulate why the November 20, 1998 notice to quit was equivocal.
The defendant's brief in support of a Motion to Dismiss claimed the following prior documentation: First summary process action: Notice to Quit dated November 20, 1998 served November 27, 1998, complaint dated December 14, 1998 returnable December 29, 1998 and withdrawal of first action dated January 15, 1999. Second summary process action: Notice to Quit dated January 18, 1999 served January 23, 1999, complaint dated February 12, 1999 returnable February 22, 1999, amended complaint dated March 3, 1999 and withdrawal of second action dated November 26, 1999.Third summary process action (this instant action): Notice to Quit dated November 20, 1998 served November 27, 1998, complaint returnable December 6, 1989, amended complaint dated December 2) 1989. The defendant did not ask this court to take judicial notice of the first two summary process actions. The plaintiff is relying on the first notice to quit issued and served in this case. No notice to quit prior to November 20, 1998 was offered into evidence. See Exhibits 1, 2, 3, 4, 5 and 6 for pleadings in the first two summary process cases.
This court was assigned the second summary process action and reviewed the entire file at that time. After this court's review of the file on the record with all counsel present, the plaintiff withdrew that action. That withdrawal was filed prior to the commencement of this litigation. The Tenth Special Defense does not appear to raise the issue of a prior pending action. The issues on the Tenth Special Defense, if it raises the prior pending action doctrine, are found for the plaintiff. CT Page 235
When a notice to quit terminates a tenancy, it puts the defendant in the position of being a tenant at sufferance. "Termination of the lease does not terminate the tenancy since, upon service of a notice to quit, a tenancy at sufferance is created." O'Brien Properties, Inc. v.Rodriguez, supra, 215 Conn. 372. The court has already found that the defendant was already a tenant at sufferance since there was no oral or written agreement. If the defendant was a tenant at sufferance, any service of a notice to quit before the November 20, 1998 notice to quit still left her as a tenant at sufferance. The plaintiff has alleged in the First Count of the complaint that the defendant is a tenant at sufferance: "The defendant, Karen Anthony, originally had the right or privilege to occupy the premises but such right or privilege has terminated." This reason is both contained in the current notice to quit and in the First Count of the plaintiffs complaint. This language is the proper method of terminating a tenant at sufferance. Lonergan v.Connecticut Food Store Inc., supra, 168 Conn. 131. Furthermore, it is a statutory reason for eviction, "when one originally had the right or privilege to occupy such premises but such right or privilege has terminated." General Statutes § 47a-23(a)(3).
The plaintiff used the original notice to quit dated November 20, 1998 in the prosecution of this, the third summary process action. That same notice to quit also supported the first summary process action. That original notice to quit supports the reasons for eviction set forth in the First Count of this current lawsuit. That notice to quit is valid.Amresco Residential Corp. v. Jones, Superior Court, judicial district of Hartford, Housing Session of Hartford, Docket No. SPH-96230 (March 26 1998, Beach, J.) (22 Conn.L.Rptr. 198) (1998 Ct. Sup. 4063).
This court finds that the November 20, 1998 notice to quit terminating this tenancy at sufferance and requesting the vacating of the premise on or before December 10, 1998 is timely and unequivocal. The notice to quit is valid on its face. It cites the proper statutory language. It meets the requirements of law. Its language is unequivocal. It was issued and served within the statutory time requirements. This court has held that an eviction can be based on a valid notice to quit when the first summary process lawsuit was withdrawn and followed by a second notice to quit. Neither I withdrawal of the first action nor the issuance of a second notice to quit voided the first notice to quit. Lombardi v. Dunning, Superior Court, judicial district of Stamford-Norwalk, Housing Session of Norwalk, Docket No. SPNO 95-061751 S (July 31, 1995, Tierney, J.) (14 Conn.L.Rptr. 606) (1995 Ct. Sup. 8526).
The issues on the Tenth Special Defense are found for the plaintiff CT Page 236
XI. Eleventh Special Defense:
This special defense alleges: "The plaintiff terminated an earlier summary process action by withdrawal on or about November 29, 1999. This action is invalid and void because it violates CGS § 47a-15a, having been issued and/or served within the statutory grace period." This issue was raised by the defendant's Motion to Dismiss, which was denied by this court. This special defense does not impact the prior pending action doctrine. The withdrawal of the second prior action occurred on November 26, 1999. This instant lawsuit was returned to court on December 2, 1999 and date stamped. This court heard representations by counsel that the prior action was withdrawn and the withdrawal was filed prior to the commencement of the instant lawsuit. The Eleventh Special Defense, on its face, does not invoke the prior pending action doctrine. The court finds that the prior pending action doctrine is not a defense since the prior action was withdrawn just before the service of this current summary process lawsuit.
The defendant appears to be invoking the non-payment of rent statute, General Statutes § 47a-15a. This statute contains a grace period of nine days. It is the defendant's claim that since the action was withdrawn on November 26, 1999, the defendant had another nine days in which to pay rent and/or to remain in the premises prior to the commencement of a new action. The new action was commenced virtually the next day, well within this grace period.
The short answer to this special defense is that there is no claim anywhere in the notice to quit or in the complaint of non-payment of rent. The defendant is not being evicted for nonpayment of rent. The statutory grace period under General Statutes § 47(a)-15a has only to do with non-payment of rent. Such is not in issue in this case. This case involves the termination of a tenancy at sufferance and lapse of time. The statutory grace period of General Statutes § 47a-15a does not apply to a tenancy at sufferance or a claim of lapse of time. The defendant has not furnished any authority to support the special defense.
The issues on the Eleventh Special Defense are found for the plaintiff
First Set-Off:
This Set-Off claims: "Before any ejectment may be issued in this action, the plaintiff must compensate the defendant for all improvements made to The Premises pursuant CGS Sec. 47-30." This First Set-Off is identical to the Third Special Defense. The plaintiff is claiming as her only relief, immediate possession of 1215 Fairfield Beach Road. She is CT Page 237 not seeking money damages. A set-off is appropriate in any claim involving money damages. "In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other." General Statutes § 52-139 (a). The issue of unjust enrichment will be discussed in the Second Count, defendant's counterclaims.
For the reasons already stated, the issues on this First Set-Off are found for the plaintiff in the same manner as found in the Third Special Defense.
Second Set-Off:
This Set-Off claims: "The defendant has, in good faith, made improvements, paid taxes and I other expenses related to The Premise for several years. Equity requires that the plaintiff repay the defendant for these expenses because otherwise, the plaintiff has been unjustly enriched." This same issue is contained in the Second Count, defendant's counterclaim. This Second Set-Off is identical to the allegations of the Ninth Special Defense. A set-off is not appropriate in a summary process case. General Statutes § 52-139.
The issue on the Ninth Special Defense, having been found in favor of the plaintiff, the issues on the Second Set-Off are, therefore, found in favor of the plaintiff.
First Count, defendant's counterclaim:
The defendant seeks the imposition of a life estate on the basis of constructive fraud. She has restated the first 15 paragraphs of the Second Special Defense as the first 15 paragraphs of the First Count, defendant's counterclaim. She further alleges a confidential and special relationship between Richard and the defendant, that is husband and wife, the plaintiff and Richard, that is sister and brother, and the plaintiff and defendant, that is sisters-in-law. She alleges, "Because of these relationships, the defendant believed and trusted the plaintiff to honor the promises and representations made to Richard" by Vincent Anthony and Lena Anthony. Further, the defendant alleges, "The actions and conduct of the plaintiff as set forth herein breached this confidential and special relationship and compensate a constructive fraud upon the defendant, to her personal, financial and emotional detriment," and "The plaintiff has refused to recognize the defendant's right to life use of the Premises, and by her actions has caused the defendant severe and continuing emotional distress, to the defendant's emotional, financial and personal detriment, and in derogation of her rights." The CT Page 238 issues on the Second Special Defense have been found by this court for the plaintiff.
A special relationship has been found to exist between brothers. Dunhamv. Dunham, 204 Conn. 303, 323 (1987) A familial relationship can legally establish a special relationship requiring trust and confidence between the parties. Krondies v. Norwalk Savings Society, 53 Conn. App. 10, 104
(1999). The defendant has offered no authority that a special relationship exists between in-laws, especially an in-law relationship that terminated upon the death of Richard Anthony. The defendant must establish the existence of a confidential or special relationship.Mitchell v. Mitehell, 31 Conn. App. 331, 335 (1993).
"If the plaintiff has proved . . . that there was a special relationship of trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration, there can be a presumption of fraud arising out of that relationship. That's the fiduciary or confidential relationship." Dunham v. Dunham, supra, 204 Conn. 321;Albuquerque v. Albuquergtte, 42 Conn. App. 284, 287 (1996). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him . . ." Dunham v. Dunham, supra, 204 Conn. 322. "Whether such a confidential relationship exists is a factual question for the trial court." Albuquerque v. Albuquerciue, supra, 42 Conn. App. 287. The defendant has not alleged any special relationship between Vincent Anthony and Ida Lamy, Ida Lamy and the plaintiff, and Vincent Anthony and the plaintiff The defendant tried the case on the theory of an in-law special relationship; sister to sister-in-law.
There has been no case brought to the attention of this court indicating that a sister and a sister-in-law, by reason of that status, are in a special relationship or confidential relationship. Brothers owning real property togther have been held not to be in a confidential or special relationship. Fox v. Fox, Superior Court, judicial district of Hartford at Hartford, Docket No. 700905 (July 23, 1991, Latter, STR.) (1991 Ct. Sup. 6424). A parent and child and a husband and wife are in a confidential or special relationship. Id.; Cohen v. Cohen, supra,182 Conn. 203.
The defendant offered no evidence of a confidential or special relationship between the plaintiff and the defendant other than their status as in-law relatives. There was no formal business between the CT Page 239 plaintiff and defendant. They did not consider each other a partner in a joint real estate venture involving 1215. They were no longer sisters-in-law after Richard's September 1998 death. The parties barely spoke to each other. They met infrequently and then only at large family gatherings. This evidence does not establish a "justifiable trust confided on one side and a resulting superiority and influence on the other." Durham v. Durham, supra, 204 Conn. 320.
The death of the natural father was held sufficient to destroy any special relationship between the non-resident stepmother and the stepson after his natural father's death. Downey v. Downey 1 Conn. App. 489, 495
(1984). It has been held that the relationship of long time friends, speaking a common foreign language, both unable to read or write English and one of whom is god-parent for the other child, is not a confidential relationship. Worobey v. Sibieth, 136 Conn. 352, 359 (1949) "The relationship of parents-in-laws to daughter-in-law is not sufficiently analogous to that of parent and child, attorney and client, or guardian and ward to support a conclusion that the relationship is one in which there is ordinarily a special trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration." Zack v. Guzauskas,171 Conn. 98, 104 (1976). The defendant has failed to sustain ";her burden of proof that there was a confidential or special relationship. Id. 104. See listing of cases discussing the type of familial relationships held to be confidential. Castaldo v. Castaldo, supra, Superior Court, Docket No. SPBR 94 228656.
This First Count essentially alleges fraud. The plaintiff must sustain her burden of proof by clear and convincing evidence. Crepeau v.Gronager, 41 Conn. App. 302, 309 (1996). The defendant is attempting to set aside the August 23, 1966 conveyance of the property from Ida Lamy to the plaintiff "A party who seeks to set aside a conveyance as fraudulent bears the burden of proving that the conveyance was made without substantial consideration and that, as a result, the transferor was unable to meet his obligations (constructive fraud) or that the conveyance was made with fraudulent intent in which the transferee participated (actual fraud)." Id. 309; Tessitore v. Tessitore,31 Conn. App. 40, 42 (1993). The defendant has only pled constructive fraud, which is the only theory this court can consider. In the case of constructive fraud, if there is a special relationship., then there is a presumption of such fraud. The burden of proof will then shift to the transferee to show that there was no fraud in the transaction.
This court has concluded that Vincent Anthony intended to convey 1215 to Arlene Norling He requested that Ida Lamy sign the quit claim deed in CT Page 240 August 1966 in order to transfer 1215 to the plaintiff. Ida Lamy did sign the quit claim deed. The 1215 beach house and its beach side lot were conveyed contemporaneously with a mortgage recorded on another piece of property that the Norlings were purchasing further to the west on Fairfield Beach Road, Fairfield Connecticut. There is no evidence to indicate that this transaction was fraudulent. There was no evidence to indicate that the transfer was anything other than the gift of property given to Arlene Norling by Vincent Anthony and Lena Anthony.
Since this was a father-daughter transaction, the grantee was the natural object of the grantor's bounty. The law thus presumes a donative intent. Farrah v. Farrah, 187 Conn. 495, 500 (1982). There is insufficient evidence to rebut this donative intent. Denby v.Commissoner, 6 Conn. App. 47, 54 (1986); State v. One, Superior Court, judicial district of New Haven at Meriden, Docket No. CR-193560 (May 18, 2000, Robinson, J.) (6 Conn. Ops. 609). Other parcels of real properties and businesses were given to each of the six siblings by Mr. and Mrs. Anthony. The parents had a pattern of making such gifts during their lifetime. Richard Anthony, the husband of the defendant, Karen Anthony, benefitted from these gifts. Vincent Anthony purchased 1220, the creek side lot, from Frances V. Pistey on November 22, 1963 and title was taken in the name of Ida Lamy, a fact not known by Mrs. Lamy. Exhibit 9. Later, Ida Lamy quit claimed her interest in 1220 to Richard Anthony. Richard and Karen constructed a house on this lot which was sold by Karen for $630,000 in the summer of 1999, while the summary process litigation on 1215 was pending. Richard Anthony also received Esquire Motors, a used car business, as well as real property at 2778 and 2182 Fairfield Avenue., Bridgeport, CT on which that business was located, all as gifts from his parents. The defendant failed to produce sufficient evidence of any wrongful conduct. Hieble v. Hieble, 164 Conn. 56, 63 (1972). The August 23, 1996 conveyance was a valid conveyance, not a constructive fraud.
The only evidence of a life use was testimony by the defendant of promises of life use made by Vincent and Lena Anthony well after Augrist 23, 1966. There was no evidence that the plaintiff was aware of this life use claim by the defendant until the commencement of the summary process litigation in 1998. There is no evidence that the plaintiff had any knowledge of her parents' life use statements until the defendant raised that issue in the summary process litigation. The plaintiff denied ever discussing a life use with anyone. The court finds the plaintiffs testimony credible in that regard and finds no such awareness or knowledge by the plaintiff. There was no testimony that the plaintiff ever discussed a life use with either the defendant or Richard Anthony. No documents mentioning a life use were offered. CT Page 241
Furthermore, the defendant has no standing as a sister-in-law to make a claim of constructive fraud. The defendant never had title to 1215. The record title owner from 1959 to 1966, Ida Lamy, was not joined as a party in this lawsuit. Ida Lamy is alive and testified before this court. Ida Lamy was the transferor. The allegations of this complaint do not meet any of the requirements of constructive fraud.
This court notes that other members of the Anthony family other than the parties to this lawsuit used the beach house after the promises. There was no evidence that the life use of the defendant would be subject to general family use including that of the Norling family. The court notes that a life use under these circumstances is tantamount to chaos that may not even be resolved with a written plan of occupancy or additional litigation. Hackbarth v. Hackbarth, supra, Superior Court, Docket No. 409600.
For all of the above stated reasons, the issues on the First Count, defendant's counterclaim are found for the plaintiff.
Second Count. Defendant's Counterclaim:
This count alleges unjust enrichment by reason of the improvements and payments made by the defendant, Karen Anthony, and her deceased husband, Richard Anthony, during their occupancy of 1215. Most of the trial was spent on bills, invoices, checks and bank records. A number of the service providers testified. This court has reviewed carefully and in detail all the documentary evidence.
Normally a monetary claim for relief is not appropriate in a summary process action. The issues of unjust enrichment in this case, though, go hand-in-hand with the defenses of title, constructive trust and resulting trust. In order for this court to hear the evidence of title, constructive trust and resulting trust it had to hear evidence of the improvements made, the cost of those improvements and the payments made for those improvements. The court, in the interest of judicial economy, agreed to hear both the monetary claims and the summary process claims since, (1) it was judicially efficient; (2) the parties agreed; and (3) the monetary claims and equitable defenses were intertwined. Fellows v.Martin, supra, 217 Conn. 70. The Plaintiffs Trial Brief dated August 31, 2000 states at page 15: "The plaintiff concedes that a claim of unjust enrichment may and has been raised as a counterclaim." Thus, the court is going to consider the claim of unjust enrichment.
Connecticut has adopted two methods of recovery under the legal theory of unjust enrichment: quantum meruit and constructive trust. CBS SurgicalGroup, Inc. v. Holt, 37 Conn. Sup. 555, 557 (1981). Under quantum meruit CT Page 242 or quasi-contract the theory of unjust enrichment can be applied "wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." Meaney v. Connecticut Hospital Assn., Inc,250 Conn. 500., 511 (1999). Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.
 The right of recovery for unjust enrichment is equitable, its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense the plaintiff . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. (Citations omitted.)
Polverari v. Peatt, 29 Conn. App. 191, 200-201 (1992), cert. denied,224 Conn. 913 (1992).
These three elements of the quantum meruit form of unjust enrichment have also been described as follows: "Three essential elements must be established in order that a plaintiff may establish a claim based on unjust enrichment. These elements are: 1. A benefit conferred upon the defendant by the plaintiff 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." CBS Surgical Group Inc. v. Holt, supra, 37 Conn. Sup. 558.
It is not essential that an enforceable contract exist between the parties. Kearns v. Andree, 107 Conn. 181, 185 (1928); Franks v. Lockwood,146 Conn. 273, 278 (1959). "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract." Burns v.Koellmer, 11 Conn. App. 375, 383 (1987). The defendant has no contract remedy.
The second method of recovery on the theory of unjust enrichment is by reason of constructive trust. "A party who has been unjustly enriched may be transformed into a trustee of a constructive trust created for the benefit of the injured party. Before the constructive trust can be created, however, there must be a duty owed, or a fiduciary or otherwise CT Page 243 special relationship between the parties." CBS Surgical Group Inc. v.Holt, supra, 37 Conn. Sup. 558-59. The defendant has pled a claim of constuctive trust in her Fifth Count, defendant's counterclaim. The court will discuss the elements of a constructive trust under the Fifth Count. Therefore only the first method of recovery under unjust enrichment, quantum meruit will be discussed as to the Second Count, defendant's counterclaim.
This court finds: (1) The plaintiff was benefitted by the increase in fair market value of the beach house by the improvements made by the defendant and her husband. Title to the beach house remained in plaintiffs name when the improvements were made; (2) The plaintiff had actual knowledge of all the exterior improvements and either knew or in the exercise of reasonable inspection should have known of all major interior improvements; (3) The plaintiff did not protest the improvements or request the defendant and her husband remove them; (4) The plaintiff did not pay for these improvements, other than the insurance proceeds which amounts have been specifically excluded from any damage award by this court. This court finds that the lack of demand to plaintiff by defendant for reimbursement for these improvements is irrelevant to the equitable considerations; (5) This failure of the plaintiff to pay the defendant and her husband has caused damages to their detriment in that they did not acquire any fee interest in the real property; and (6) The retention by the plaintiff of the benefit of these improvements without payment by the plaintiff to the defendant is unjust and contrary to equity and good conscience. Misisco v. LaMaita, 150 Conn. 680, 683-85 (1963).
Although the Estate of Richard Anthony is not a party to this case and there is substantial evidence that he made a majority of the improvements and repair payments from a bank account in "his own name, the defendant testified that the actual funds used were joint funds, commingle by a husband and wife living together. Even though there is little documentation of the exact nature and manner of commingling, the defendant retained substantial invoices and records of these improvements and repairs. A number of the invoices were addressed to the house, not to an individual. Exhibits 84, 85, 89., 90 (2nd page), 92 (1st page) and 109(2nd page). In addition, on a number of occasions the defendant testified that she paid thousands of dollars in invoices in cash. Exhibits 83, 87and 91. A number of invoices were made out in the defendant's name.Exhibits 83, 94, and 111. A number of invoices were only marked for identification and some payment evidence was not introduced at trial. The defendant testified that she participated in all monetary and contract decisions as to all repairs and improvements. Substantial funds were paid from a joint bank account. There was no evidence that a third party made the payments except for the aforementioned storm insurance proceeds. The court finds the defendant's testimony credible as to the source of CT Page 244 payments and finds that all monies paid were from joint commingle funds of a husband and wife, of which the contributions of the defendant individually were substantial. The presumption of General Statutes §46b-37 (a) has been rebutted by the defendant's credible testimony. Property payments by a deceased relative while plaintiff occupied the real property were held to the subject to unjust enrichment consideration and supported the imposition of a constructive trust for plaintiffs benefit. Gulack v. Gulack, 30 Conn. App. 305, 308 (1993); Bowen v.Morgillo, 128 Conn. 442, 446-47 (1941) (repairs bills permitted as an award of unjust enrichment).
At trial the court summarily disallowed some monetary claims as a discovery sanction. Exhibits 80 ID, 116 ID, 117 ID, 123 ID and 125 ID. In addition, the court made findings during the trial as to the fair value of some disputed items. The court finds that insurance companies have paid a total of $54,909.94, which was paid for improvements to 1215.Exhibit 118. Some personal property invoices were disallowed at trial.Exhibit 93 ID. Some invoices were disallowed as either Exhibits 90 (1stpage), 92 (2nd page) and 94 (partial). This court concludes that the defendant is not entitled to any credit for the discovery sanctions, the disallowed invoices, insurance payments or reduction in the face amount of certain exhibits made by this court during trial Furthermore, the court finds that a number of the improvements were personal to the occupant and did not improve the value of the real property. Such items as wallpaper, interior decoration, interior painting and the like, are all disallowed as personal improvements made by the defendant since they added no value to the property. Exhibit 93 ID and 101 ID.
The court was prepared to set-off from improvements and repairs made, an amount for the reasonable use and occupancy of the premises by Richard Anthony and Karen Anthony throughout the entire fifteen plus years they lived at 1215. The court heard no evidence as to the reasonable value of use and occupancy, either from the parties, real estate brokers or appraisers. Therefore, the court cannot set-off any reasonable use and occupancy from the amount of improvements and repairs.
The court finds that the exhibits mentioned three and four paragraphs later in this decision establish the fair value of improvements made to the property by the defendant for which the plaintiff has been unjustly enriched. These improvements have increased the value of the beach house by converting it to a modern home that complies with the current federal insurance flood regulations. "The right of one who believes himself to be the owner of property to recover of the true owner the amount in which its value has been enhanced by improvements or expenditures the former has made in good faith., has its roots in equitable principles of ancient origin." Schleicher v. Schleicher, supra, 120 Conn. 534. The costs of CT Page 245 constructing the improvements, not the fair market value of the building with the improvements, is the proper measure of damages in unjust enrichment "We conclude, as a matter of law, that, although the defendant is entitled to damages, the damages should be limited to the cost of constructing the addition." Gulack v. Gulack, supra, 30 Conn. App. 318.
The defendant claims monetary relief in the Second Count, defendant's counterclaim for unjust enrichment. Defendant's Memorandum of Law AfterTrial., August 31, 2000, page 44. She lists the repairs and improvements paid along with the trial exhibit number in Schedule A attached to her Memorandum. The defendant seeks an award of $141,353.74 for repairs and improvements and $37,428.02 for real estate taxes paid for a total claim of $178,781.76.
This court allows the following exhibits and amounts as damages for unjust enrichment: Exhibit 72, $15,765; Exhibit 74, $450; Exhibit 75, $1,265; Exhibit 76, $1,923.13; Exhibit 77, $1,000; Exhibit 79, $1,235.50; Exhibit 81, $875; Exhibit 82, $1,175; Exhibit 83, $1,575; Exhibit 84, $664.23; Exhibit 85, $1,500; Exhibit 86, $100; Exhibit 87, $500; Exhibit 88, $377.89; Exhibit 89, $950; Exhibit 90, $780; Exhibit 91, $1,538; Exhibit 92, $400; Exhibit 94, $12,447.47; Exhibit 96, $6,688.30; Exhibit 97, $19,736 ($437 disallowed); Exhibit 98, $365.82; Exhibit 99, $1,208; Exhibit 100, $4,800; Exhibit 105, $695; Exhibit 106, $2,730; Exhibit 108, $13,575; Exhibit 109, $9,800; Exhibit 110, $2,900; Exhibit 111, $1,908; Exhibit 112, $413.40; Exhibit 113, $30; Exhibit 121, $2,850; Exhibit 127, $21,600.
In addition, the court finds the defendant credible when she testified that the following expenses were incurred and paid for by Richard Anthony and herself. Curran Home Improvement/Sean Curran, roofing repairs and siding replacements in mid 1986 after hurricane Gloria $7,000 (despite fact that Exhibit 102 ID not admitted nor seen by court); Curran Home Improvements/Sean Curran, roof-replacement, installation of skylights and other repairs after hurricane Beth $6,800 (despite fact that Exhibit 103 ID not admitted nor seen by court); Rings End Lumber Company in February 1995, decking, wainscoting and shingle material $510.96 (despite fact that Exhibits 78 ID and 115 ID not admitted nor seen by court); Huntington Company, engineering work in 1995 for $381.50 (despite fact that Exhibit 114 ID not admitted nor seen by court); Alan Benway, painting, $3,000 (despite fact that Exhibit 95 ID not admitted nor seen by court); Brian Hotlinko, masonry on house foundation, $3,970 (despite fact that Exhibit 73 ID not admitted nor seen by court). The court allows these amounts on damages for unjust enrichment.
These last two paragraphs total $155,483.20 CT Page 246
The total of the above repairs and improvements are $155,483.20. The insurance proceeds from the storm damages of $54,909.94 must be subtracted from this total. Exhibit 118. The insurance proceeds from the policy owned by Arlene Norling was given to Richard Anthony in the amount of $54,909.94 and deposited into his account on September 28, 1993. The proceeds were used to pay for the improvements. This results in $100,573.26 for repairs and improvements paid by Richard Anthony and the defendant from funds other than storm insurance proceeds.
This court disallows the defendant's claim of $36,428.02 for real estate taxes on 1215. Exhibit 120 less $1,000 by stipulation. Only small payments were made by the defendant personally. The two largest payments for real estate taxes were on June 15-16, 1998 in the amount of $31,300.52 when a tax foreclosure was imminent. The defendant resided in the property. No evidence was offered to support a set-off of reasonable use and occupancy for the fifteen plus years she occupied 1215. There never was a specific agreement that Richard Anthony and the defendant I would pay taxes in lieu of rent. Other than the repairs, improvements and utility expenses, the defendant and Richard Anthony paid nothing to live with their family in a fully winterized updated waterfront house. Applying principles of equity, this court cannot find that the plaintiff was unjustly enriched by the defendant's payment of $36,428.02 of real estate taxes. Since the defendant had use of the premises, rent and use and occupancy free, during the period that she and her husband paid the real estate taxes, this payment of real estate taxes did not confer any benefit on the plaintiff. CBS Surgical Group Inc. v. Holt, supra, 37 Conn. Sup. 558. A long term occupier of property is properly subject to the obligation to pay real estate taxes. General Statutes § 12-48.
In conclusion, this amount of $100,573.26 is found to be fair and reasonable expenditures made by the defendant and her husband. The improvements made by both husband and wife were intended to improve the premises. These improvements were done by them without expectation of compensation since they had the understanding, in their own mind, that they were entitled to live in the property for the remainder of their joint lives. These improvements have increased the value of the property, dollar for dollar for each dollar expended, The benefit to the owner is the measure of damages in unjust enrichment. Monarch AccountingSupplies, Inc. V. Prezioso, 170 Conn. 659, 666-67 (1976); HartfordWhalers Hockey Club v. The Uniroyal Goodrich Tire Co., 231 Conn. 276, 285
(1994). "Where damages are appropriate but difficult to prove the law eschews the necessity of mathematical exactitude. Such exactitude in the proof of damages is often impossible, and . . . all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) Id. CT Page 247 285; Dooley v. Leo, 184 Conn. 583, 587 (1981). The court also concludes that this claim for the equitable remedy of unjust enrichment under the unique facts of this case, implicates the right of possession and is therefore a proper counterclaim seeking monetary relief in a summary process action. Fellows v. Martin, supra, 217 Conn. 70.
The issues on the Second Count, defendant's counterclaim are found for the defendant, Karen Anthony, in the amount of $100,573.26.
Third Count, Defendants' Counterclaim:
This count alleges: "The plaintiff has failed and refused to pay the defendant for the improvements to The Premises, in violation of CGS sec.47-30 to the defendant's financial detriment." These are the same issues raised by the Third Special Defense. The issues on the Third Special Defense were found for the plaintiff for the reasons stated. The defendant has recovered these costs in the Second Count, defendant's counterclaim.
The issues on the Third Count, defendant's counterclaim are found for the plaintiff.
Fourth Count, Defendant's Counterclaim:
The defendant is making a claim for a resulting trust based on certain statements and actions of Vincent Anthony and/or Lena Anthony, that plaintiff holds title in trust for the defendant's life use. "A resulting trust arises by operation of law at the time of a conveyance when the purchase money for the property is paid by one party and the legal title is taken in the name of another . . . It arises to enforce presumed or inferred intent usually in the absence of any element of fraud." Spatolav. Spatola, 4 Conn. App. 79. 82 (1985). "When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the one paying the money." Franke v. Franke,140 Conn. 133, 138 (1953). A resulting trust does not require wrongful conduct, which is an issue in a constructive trust. It has been held that a resulting trust will only be found in favor of the party who actually pays the purchase price.
The defendant has not alleged that she paid Frances V. Pistey any portion of the purchase price at the time 1215 was conveyed to the plaintiff. The purchase price in 1959 was paid by Vincent Anthony. The defendant has not alleged that she paid Vincent Anthony any portion of the purchase price. Neither he nor his estate are parties in this case. The August 23, 1966 transaction was a gift to the plaintiff. The CT Page 248 defendant, Karen Anthony, paid nothing toward the original purchase price nor did her husband. On August 23, 1966 the defendant was not acquainted with anyone in the Anthony family. The defendant cannot avail herself of the benefit of payments made by another for the purpose of imposing a resulting trust in her favor. Farrah v. Farrah, supra, 187 Conn. 500. The party seeking to establish the trust has the burden of proving the facts necessary to raise a resulting trust, including the fact that he paid the purchase price. Walter v. Home National Bank Trust Co., 148 Conn. 635,639 (1961). The defendant argues that a presumption of a resulting trust arises from the fact that Vincent Anthony paid the purchase price and title was taken in the name of another. That presumption, if it exists in law, is rebutted because the plaintiff is the natural object of his bounty, thus creating a presumption of a donative intent. The evidence has failed to rebut that donative intent. Id. 638; State v. One, supra, Superior Court, Docket No. CR-193560.
The issues on the Fourth Count, defendant's counterclaim are found for the plaintiff.
Fifth Count, Defendant's Counterclaim:
This count raises the issue of a constructive trust alleging that the plaintiff holds title to 1215 in a constructive trust for the defendant's life use. "A constructive trust arises contrary to intention and in invitum, against one or who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and in good conscience, hold and enjoy." Spatola v. Spatola, supra,4 Conn. App. 81; Zack v. Guzauskas, supra, 171 Conn. 103. "A constructive trust arises whenever another's property has been wrongfully, appropriated and converted into a different form. . . . It also arises when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Spatola v. Spatola, supra,4 Conn. App. 81. "The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property." Gulack v. Gulack, supra, 30 Conn. App. 310; Filosiv. Hawkins, supra, 1 Conn. App. 639 (Constructive trust imposed in a counterclaim by a daughter and her husband to her father's summary process action where defendants had occupied a property for sixteen years paying most of the expenses attributable to the property including all the CT Page 249 mortgage payments, all property taxes, all insurance premiums, maintenance and improvements. The house was totally constructed with the initial mortgage proceeds).
This court has already found that there was no wrongful conduct proven by the plaintiff acquiring title on August 23, 1966. This court has already found that it was intention of Vincent Anthony that the full right, title and interest in and to 1215 be conveyed by gift to Arlene Norling. She has been the record title owner since August 23, 1966. It was a completed unconditional gift. Vincent Anthony never had title to the property. An action for the imposition of a constructive trust requires proof of wrongful holding. No such proof has been shown by the defendant. The defendant had no relationship with any Anthony, Norling or Lamy family member until the 1970's.
The grantor of the property in the April 21, 1959 conveyance to Ida Lamy, Frances V. Pistey, was not related to the parties in the case and was not joined as a party. The court finds that the grantor, Frances V. Pistey, received full consideration in cash in 1959 and has no further involvement or interest in 1215. The deed contains no reconveyance, trust or life use language. Cohen v. Cohen, supra, 182 Conn. 203. The defendant has not proven otherwise.
The 1959 transaction in which Vincent Anthony made all payments and arranged for title to be taken and held in his sister's name appears to be closer to a constructive trust situation. There was no evidence of an intent by Vincent Anthony that Ida Lamy convey the property to any specific third person at the time titled passed in 1959. In addition, there is no evidence that the transferee, Ida Lamy. did anything other than obey the instructions of Vincent Anthony. This she evidenced by executing a quit claim deed on August 23, 1966 to the plaintiff at Vincent Anthony's request. A brother and sister stand in a confidential relationship especially where the brother pays for real property taken in the title of the sister. It would appear to be unjust for Ida Lamy to retain title to the property. She divested herself of title in 1966 at Vincent's request, thus absolving herself of any of the unjust enrichment claim. Vincent never had title to 1215. Based on all these factors, the defendant has failed to prove a constructive trust in her favor arising out of the Vincent Anthony Ida Lamy relationship.
The August 23, 1966 transfer to the plaintiff has already been held by this court to be a completed gift, consistent with the transfers by gift made by Vincent and Lena Anthony to their other children. There was no evidence of any demand on the plaintiff by her parents for the reconveyance of 1215. In 1966 the defendant was not known to any member of the Anthony family. A father and daughter are in a confidential CT Page 250 relationship, but there was no expressed intent by either Vincent Anthony, Lena Anthony or Ida Lamy, that the plaintiff, as transferee, in 1966, had the obligation to convey title to 1215 to someone else. This court has already ruled on the unjust enrichment portion of the defendant's claim. The court finds no evidence of wrongful conduct by the plaintiff in holding title to 1215. Once the sum of $100,573.26 is paid by the plaintiff to the defendant, all issues of unjust enrichment will be rendered moot. There will be no further need for the equitable remediation of a constructive trust. For all these reasons the defendant has failed to prove a constructive trust in her favor, arising out of the Arlene Norling-Vincent Anthony and Arlene Norling-Ida Lamy relationships.
This count further claims: "The plaintiff will be unjustly enriched if she extinguishes, or refuses to recognize, the defendant's life use." The promise of life use was made by Vincent and Lena Anthony to Richard and Karen Anthony after the title had been conveyed to Arlene Norling. There are no pleadings alleging that Arlene Norling made any promise of life use. There is no evidence that Arlene Norling agreed to any such promises made by her parents. Any such promise by Vincent and Lena Anthony occurred after the conveyance and gift to the plaintiff These promises are not binding on the plaintiff. The defendant seeks to obtain the benefit of a post-conveyance promise made by a now deceased Vincent Anthony and Lena Anthony to the defendant and impose a constructive trust on property conveyed to the plaintiff over thirty four years ago. This violates Connecticut public policy. In a similar situation involving an option it was held, "It is not consistent with the public policy of Connecticut . . . that the dead hand of the [property seller] should rest on this property and control its price and its assignability for an unlimited future." Lewis Oyster Co v. West, 93 Conn. 518, 533 (1919).
The issues on the Fifth Count, defendant's counterclaims are found for the plaintiff.
The Sixth Count and Seventh Count of the defendant's counterclaim have been withdrawn by the plaintiff during trial by a withdrawal dated June 1, 2000 and filed on June 2, 2000.
 CONCLUSION
The court therefore finds that the issues on the First Count of the plaintiffs complaint seeking summary process have been proven as alleged and no superior title or right to possession has been proven in the defendant by any of her counterclaims, set-offs or special defenses. The issues on the two set-offs and eleven special defenses have been found for the plaintiff. CT Page 251
The issues on the First Count of the plaintiffs complaint are hereby found for the plaintiff. The Court orders that immediate possession of the premises at 1215 Fairfield Beach Road, Fairfield, CT is awarded to the plaintiff, Arlene Norling, as against the defendant, Karen Anthony.
The issues on the First Count, defendant's counterclaim are found for the plaintiff.
The issues on the Second Count, defendant's counterclaim are found for the defendant, Karen Anthony, against the plaintiff, Arlene Norling, and a monetary judgment will enter in favor of the defendant, Karen Anthony, against the plaintiff, Arlene Norling in the amount of $100,573.26.
No costs will be allowed against either party.
The summary process trial and summary process appellate rules and procedures shall apply to all post-judgment proceedings on all counts of the complaint, set-offs., special defenses and counterclaims.
SO ORDERED.
BY THE COURT,
KEVIN TIERNEY, J.